LOCAL UNION 89, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff-Appellee,

v.

GENERAL TELEPHONE COMPANY OF the NORTHWEST, Defendant-Appellant.

No. 23500.

United States Court of Appeals, Ninth Circuit.

Aug. 17, 1970.

William J. Powell (argued), Gaiser & Powell, Spokane, Wash., for defendant-appellant.

David E. Williams (argued), Critchlow, Williams, Ryals & Schuster, Richland, Wash., for plaintiff-appellee.

Before MERRILL and KOELSCH, Circuit Judges, and TAYLOR, District Judge.*

MERRILL, Circuit Judge:

Local Union 89 brought this suit for declaratory relief under § 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a), seeking judgment establishing that the collective bargaining contract to which the Union and appellant Telephone Company are parties includes within its coverage the category of company employees designated as "traffic supervisors." Judgment was for the Union and the company has taken this appeal.

The contract was dated July 16, 1966, with a two-year term. "Traffic supervisors" were included within its coverage. In 1967, pursuant to what it designated as its "Group Chief Operators Plan," the Telephone Company assigned new duties to its traffic supervisors, including the interviewing of applicants for positions, the making of hiring and pro-

---

* Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

motion recommendations, the disciplining of employees and the reassignment of work functions.

The company, taking the position that with the new duties the old category of traffic supervisors ceased to be "employees" under 29 U.S.C. § 152(3)[1] and became "supervisors" under 29 U.S.C. § 152(11),[2] sought an agreement from the Union expressly excluding the category from coverage of the contract. The Union refused. The company then petitioned the National Labor Relations Board for a unit clarification and secured a Board determination that the traffic supervisors, with their new duties, were "supervisors" within the meaning of the Act and thus were excluded from the collective bargaining unit represented by the Union. The company then ceased deducting Union dues for these supervisors and instituted a new salary schedule for them. The Union unsuccessfully filed an unfair labor practice charge with the Board, asserting refusal to bargain. This suit followed.

The District Court found that notwithstanding the fact that the Act did not require inclusion of the supervisors within the contract coverage, the parties, on reaching their agreement in July, 1966, intended that they be included and that they were included within the agreement. Judgment accordingly was rendered for the Union.

■ The court's disposition of the case thus did not reflect upon the Board's determination. If traffic supervisors, with their new duties assigned, remained within the coverage of the contract it was not by virtue of law; it was not by virtue of the Union's representational authority. Rather it was because

the parties had agreed to this effect. At issue before the court, then, was a dispute as to the interpretation of the contract.

■ Among the affirmative defenses asserted by the company was the following: "The subject matter of this action is subject to compulsive arbitration under provisions of Article VIII of the Collective Bargaining Agreement between the parties."

Article VIII reads in part:

"8.1. There may be differences of opinion as to the interpretation of this Agreement and it is the desire of the parties hereto to have these adjusted as quickly and efficiently as possible. To this end the following rule shall apply.

8.1.1. All such disputes not settled by the grievance procedure as provided in Article VII concerning the interpretation of the terms and conditions of this Agreement shall be disposed of by arbitration in the manner and form hereinafter provided."

In its complaint the Union anticipated this defense, alleging "It would be vain for plaintiff to invoke the grievance and arbitration procedure of the contract aforesaid by reason of defendant's activities in the premises."

Nothing in the record supports this allegation. The Union directs our attention to the following testimony by the labor relations manager of the company:

"Q Is it the position of the employer that after the National Labor Relations Board ruling, which was finalized in September, 1967, that the grievance and arbitration procedures of the con-

---

1. "The term 'employee' shall include any employee * * * but shall not include * * * any individual employed as a supervisor * * *."

2. "The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay-off, recall, promote, discharge, assign,

reward, or discipline other employees, or responsibility to direct them, or adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

tract no longer covered the traffic supervisors?

A Yes.

\* \* \* \* \* \*

Q Then it was the employer's position that any grievance as to the traffic supervisors was not entertainable by the employer, in any event, is that correct?

A Yes, afterwards, and even prior to that time, it would be arguable that they were not covered if they were supervisors."

This does not serve to establish that the company would reject arbitration of a dispute as to the meaning of the contract.

We conclude that upon the issue entertained by the District Court arbitration was, by agreement, the exclusive method of resolution. Drake Bakeries v. Local 50, American Bakery and Confectionery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

Reversed and remanded with instructions that the action be dismissed.