**UNITED INSURANCE COMPANY of AMERICA**

v.

**INSURANCE WORKERS INTERNATIONAL UNION, AFL–CIO**

and

**Nicholas M. Rongione.**

**Civ. A. No. 70–1574.**

United States District Court,
E. D. Pennsylvania.

Aug. 13, 1970.

James J. Leyden, Jacob P. Hart, Philadelphia, Pa., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Edward McGuinn, Chicago, Ill., of counsel, for plaintiff.

Cole & Groner, Isaac N. Groner, Washington, D. C., for defendants.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW AND ORDER

JOSEPH S. LORD, III, District Judge.

Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 *et seq.* that certain grievances filed by the defendant union are not subject to arbitration. With the agreement of the parties we reserved decision on the defendants' motion under F.R.Civ.P. 12(b) (6), and entertained plaintiff's motion for summary judgment, which is basically a cross-motion for judgment on the pleadings since the parties' stipulation of facts consists of the complaint with some minor additions and deletions. We excluded all evidence of contract bargaining history, Insurance Workers Int'l Union v. Home Life Ins. Co. of America, 255 F.Supp. 926, 927 (E.D.Pa.1966), and agreed to decide the case on the basis of these cross-motions and supporting briefs.

### FINDINGS OF FACT

1. Plaintiff, United Insurance Company of America (hereinafter referred to as "United") is a corporation organized under the laws of the State of Illinois, having its principal place of business in Chicago, Illinois.

2. Defendant, Insurance Workers International Union, AFL–CIO (hereinafter referred to as "Union") is an unincorporated labor organization representing certain debit agents employed by United.

3. Defendant, Nicholas M. Rongione is Vice President of the Union, having an office located at 1311 Spruce Street, Philadelphia, Pennsylvania, and a residence located at 1816 Benson Street, Philadelphia, Pennsylvania.

4. United is engaged in the sale of insurance policies which move in interstate commerce and it is engaged in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act. 29 U.S.C.A. § 185. The members of the Union are residents of the states of Maryland, Delaware, Ohio, Pennsylvania and Washington, D. C.

5. Effective January 1, 1969, Union and United entered into a collective bargaining agreement covering debit agents employed at United's Baltimore location (hereinafter referred to as the "Baltimore Labor Agreement"). Exhibit A.

6. Effective September 26, 1969, Union and United entered into a collective bargaining agreement covering debit agents employed by United at its Pittsburgh, Pennsylvania; Wilmington, Delaware; Dayton, Ohio; Harrisburg, Pennsylvania; and Washington, D. C. locations (hereinafter referred to as the "Labor Agreement"). Exhibit B.

7. Since February 19, 1970, the Union has filed six separate, but identically worded, grievances (hereinafter referred to as the "grievances"). Exhibits D through I. The grievances all claim that United has violated the Labor Agreement and the Baltimore Labor Agreement by eliminating certain policies and substituting new policies for them.

8. All of the grievances read, in material part, as follows:

"The Company has eliminated the portfolio policies which had existed for many years, including prior to and throughout the time of the negotiation of the agreement, and has substituted an entirely new portfolio. The practical effect of this is to reduce the debit agents' earnings as though the compensation rates in the agreement had been correspondingly reduced. This is so because the new policies are not competitive. Their rates are much higher while their benefits are much lower than their competitors. The Company has made it practically impossible for the debit agents to sell and make a living in the debit business. All this was done without any prior notice or consultation with the Union. This Company conduct has violated the letter and intent of the agreement, including but not limited to recognition, compensation, lockout, management rights and general provisions. It has seriously impaired the fundamental terms of the agreement and the terms and conditions of employment and the relationship between the Company and the Union and the debit agents."

9. The Union has submitted all six grievances to the American Arbitration Association, 1819 "H" Street, N.W., Washington, D. C., for the appointment of an arbitrator.

## DISCUSSION

Plaintiff accurately states the issue before us:

"Where a collective bargaining agreement grants to management 'exclusive right' to engage in certain specifically enumerated activities, but does not also recite that the exercise of these rights shall be non-arbitrable, must the company arbitrate a grievance which is based solely on one of these enumerated activities and which specifically requests the arbitrator to revoke the company's right to engage in this activity?" Plaintiff's Brief p. 3.

The management rights clause in both labor agreements at issue before us provides:

"The Company has and retains all rights of management not specifically relinquished or modified by the provisions of this Collective Bargaining Agreement, which rights shall include, but not be limited to, the exclusive right * * * to determine the types and classes of policies to be sold and the premiums to be charged therefore * * * ."

Some of the "rights" reserved to management are modified by other provisions of the agreement. For instance, the "right" to discharge debit agents is specifically subjected to a special grievance procedure culminating in arbitration, see Ex. A, Art. XXIV, ¶ B–D; Ex. B, Art. XXV, ¶ B–D, and management's "right" to change the size and location of any debit is restricted by another provision of the agreement, Ex. A, Art. XXVII, ¶ D; Ex. B, Art. XXIX, ¶ D. However, management's "exclusive right" to change its insurance policies is nowhere else in the collective bargaining agreements "specifically relinquished or modified." Plaintiff argues that because it is not, the Union's grievances, which specifically ask the arbitrator to require the company to "withdraw the new portfolio immediately and completely and restore the situation to what it was," i. e., reissue the old policies, are not arbitrable. However, the arbitration clause, conceded by plaintiff to be "indeed a broad one," does not admit of any exceptions to its coverage. The grievance procedure, the unsuccessful conclusion of which requires arbitration,[1] extends to

1. Both agreements provide that

"* * * [i]n the event that a mutually satisfactory adjustment is not arrived at by the conferees within three (3) Company working days from the date of submission, the matter *shall*

"[t]he adjustment of any matters arising out of the terms of this Agreement affecting the terms and conditions of employment and the relationship between Company and Union and debit agent * * *." Ex. A, Art. XXIV, ¶ E; Ex. B, Art. XXV, ¶ E.

Plaintiff argues, simply, that we may look beyond the arbitration clause to determine what matters the parties have decided must be submitted to the arbitrator. Plaintiff first bottoms this argument on several quotations from the font of all wisdom in this area, the *Steelworker Trilogy,* primarily the opinion in United Steelworkers of America v. Warrior & Gulf Navigation Co.,. 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In *Warrior,* the company resisted arbitration on the grounds that a proviso in the arbitration clause withheld from the arbitrator the dispute over the company's decision to contract out certain maintenance work. That proviso excluded from arbitration "matters which are strictly a function of management." In rejecting this argument, plaintiff contends, the Court did not decide that we could not look to other provisions of the agreement, and cites the following portion of the *Warrior* opinion:

"A specific collective bargaining agreement may exclude contracting out from the grievance procedure. Or a written collateral agreement may make clear that contracting out was not a matter for arbitration." 363 U. S. at 584, 80 S.Ct. at 1354.

Plaintiff argues that the management rights clause is just such a collateral agreement. But the thrust of the *Warrior* language is that another provision, *by its own terms,* may exclude certain matters from arbitration. The management rights clause here does not do that. It merely reserves certain decisions to management without saying that the company refuses to arbitrate concerning

them. Nor does the fact that there was no separate management rights clause in the agreement before the Court in *Warrior* denigrate from the force of the following language:

" * * * [T]he judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made. An order to arbitrate the particular grievance should not be denied *unless it may be said with positive assurance* that *the arbitration clause* is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf, supra,* at 582–583, 80 S.Ct. at 1353. (Emphasis added.)

The focus has been placed upon the arbitration clause simply because that is the place the parties express their agreement about what will be subject to compulsory arbitration. Nothing in the agreement before us refers to arbitration except the arbitration clause itself, and that subjects to arbitration all disagreements "affecting the terms and conditions of employment and the relationship between Company and Union and debit agent."

Plaintiff next argues that the *Warrior* criteria were clarified in John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S. Ct. 909, 11 L.Ed.2d 898 (1964), a case primarily concerned with the question whether a successor company was bound by the arbitration provisions of a collective bargaining agreement of an acquired company. After resolving that question affirmatively, the Court treated the question whether the grievances at issue were covered by the arbitration clause. In deciding that they were, the Court employed the following language:

"Whether or not the Union's demands have merit will be determined by the arbitrator in light of the fully devel-

---

*be referred to arbitration* as provided in Section F of this Article * * *."

Ex. A, Art. XXIV, ¶ E, Ex. B, Art. XXV, ¶ E. (Emphasis added.)

oped facts. It is sufficient for present purposes that the demands are not so plainly unreasonable that the subject matter of the dispute must be regarded as nonarbitrable because it can be seen in advance that no award to the Union could receive judicial sanction." 376 U.S. 555, 84 S.Ct. 917.

Plaintiff argues that, because both agreements before us strip the arbitrator of "power or authority to * * * add to, or subtract from or to change or modify any of the terms of this Agreement * * *," no court could sanction an arbitrator's award which granted the Union's requested solution to these grievances, i. e., the reinstatement of the old insurance policies. The argument carries considerable weight, but we feel compelled to reject it for several reasons.

The overriding federal labor policy favoring arbitration for the mediation of disputes is aptly expressed in this language from the *Warrior* opinion:

"In the absence of any *express provision* excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." *Warrior & Gulf, supra,* 363 U.S. at 584–585, 80 S.Ct. at 1354. (Emphasis added.)

In the agreements before us, there is no express provision excluding any grievance from arbitration and the arbitration clause is very broad, if not all-encompassing. Nothing in the *Wiley* opinion lessens the force of these words. Moreover, we have the uneasy feeling that resort to the literal words of the *Wiley* opinion entails involvement in the merits of the present grievances. This feeling is reinforced by the language in the *Warrior* opinion immediately following that we last quoted:

"Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become involved in the construction of the substantive provisions of the labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." 363 U.S. at 585, 80 S.Ct. at 1354.

Finally, it is worth pointing out that the reason plaintiff contends that no court could sanction an arbitrator's award in favor of the Union is that an arbitrator could not order the Company not to change its policies when the management rights clause gives it the unrestricted right to do so. However, if the arbitrator were to find in favor of the Union he could very well not grant the Union's requested solution that the old policies be reinstated, but instead order some other relief. We decline to hypothesize what this relief might be, or whether any particular arbitrator's award can receive judicial sanction where the parties have unequivocally agreed to submit to arbitration "[t]he adjustment of any matters arising out of the terms of this Agreement affecting the terms and conditions of employment and the relationship between Company and Union and debit agent." Because we hold that this language applies to exercise of those "rights" delineated in the management rights clause, we will grant the defendants' motion to dismiss. International Tel. & Tel. Corp. v. Local 400, etc., 290 F.2d 581 (C.A. 3, 1961).

In addition to those contained in the foregoing discussion, we make these additional

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and the subject matter. 29 U.S.C. § 185.

2. The complaint should be dismissed.