FRANK F. FASI, MAYOR, CITY AND COUNTY OF
HONOLULU, Appellant-Appellee *v.* STATE OF
HAWAII PUBLIC EMPLOYMENT RELATIONS
BOARD, Appellee-Appellant, and HAWAII
GOVERNMENT EMPLOYEES' ASSOCIATION, ET
AL., Appellees

HAWAII STATE TEACHERS ASSOCIATION, (HEA-
NEA), Appellant-Appellee, *v.* HAWAII PUBLIC
EMPLOYMENT RELATIONS BOARD, Appellee-
Appellant, and FRANK F. FASI, MAYOR, CITY AND
COUNTY OF HONOLULU, ET AL., Appellees

HAWAII GOVERNMENT EMPLOYEES' ASSOCIATION,
ET AL., Appellant-Appellee, *v.* HAWAII PUBLIC
EMPLOYMENT RELATIONS BOARD, Appellee-
Appellant, and FRANK F. FASI, MAYOR, CITY AND
COUNTY OF HONOLULU, Appellee

NO. 6119

FEBRUARY 27, 1979

RICHARDSON, C.J., OGATA,
MENOR and KIDWELL, JJ.*

---

* Justice Kobayashi, who heard oral argument in this case, retired from the court
on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of
a case, if a vacancy arises or if for any other reason a justice is unable to continue on
the case, the case may be decided or disposed of upon the concurrence of any three
members of the court without filling the vacancy or the place of such justice."

OPINION OF THE COURT BY KIDWELL, J.

The Mayor of the City and County of Honolulu (C&C) sought by a petition filed with the Hawaii Public Employment Relations Board (Board) to obtain a declaratory ruling with respect to certain provisions of HRS Chapter 89, which provides for collective bargaining in public employment, as they related to a collective bargaining agreement between C&C and the United Public Workers, Local 646, American Federation of State, County and Municipal Employees (AFSCME), AFL-CIO (UPW). Leave to intervene was granted to UPW, as well as to Hawaii Government Employees' Association, Local 152, AFSCME, AFL-CIO (HGEA) and Hawaii State Teachers Association (HSTA), employee organizations which were parties to similar collective bargaining agreements with C&C. The State of Hawaii and the County of Hawaii also intervened. The County of Kauai intervened but later withdrew as a party.

The Board entered a decision which sustained the jurisdiction of the Board to respond to the petition and provided a declaratory ruling to the effect that the collective bargaining agreement was consistent with the provisions of Chapter 89. From this decision, C&C, HSTA and HGEA appealed to the circuit court by instituting proceedings for review as provided in HRS § 91-14. The appeals were consolidated and resulted in reversal of the decision of the Board by which it took

jurisdiction of the petition and in dismissal of C&C's petition for a declaratory ruling. The case is before us on the Board's appeal from the judgment of the circuit court. C&C did not appeal. Each of UPW, HSTA and HGEA have filed briefs as appellees. We reverse the judgment of the circuit court on the question of the Board's jurisdiction and remand the case for consideration by the circuit court of the remaining issues in the appeal from the Board's decision.

By the petition filed with the Board, C&C sought "a declaratory ruling that Section 16.09d of the Unit 1 Blue Collar Non-Supervisory collective bargaining agreement effective for the period July 1, 1972 through June 30, 1975 . . . . is void and unenforceable on the ground that Section 16.09d is in violation of HRS Section 89-9(d)." The ruling was expressly sought "in order to determine the validity of a grievance grounded solely upon Section 16.09d of the contract." Prior to a hearing scheduled by the Board on the issue of the Board's jurisdiction to entertain the petition, and "for the purpose solely of the hearing," C&C and UPW stipulated as follows:

The grievance concerns whether Petitioner violated Section 16.09d of the contract when it selected for permanent promotion to the position of Incinerator Plant Furnace Operator Mr. Cosme Rosete, Jr. rather than Mr. Arthur Aiu. On or about July 30, 1973 the UPW filed the said grievance for Mr. Aiu, a Unit 1 employee, listing as the section of the contract violated only Section 16.09d. The grievance was prosecuted through the first three steps of the grievance procedure provided by Sec. 15 of the contract. The parties having failed to agree, the grievant and the union then presented Mr. Aiu's case to the Labor Management Committee which failed to reach a majority decision. The union then served written notice on the Petitioner-Employer of its desire to arbitrate, but the parties did not select an arbitrator. In March, 1974 the parties engaged in further discussions regarding the grievance and upon again failing to reach agreement, the employer notified the union that it would seek a declaratory ruling as to the validity of the single contractual pro-

vision upon which the union relies. The union is still demanding arbitration.

The stipulation also authorized the Board to consider the above-mentioned collective bargaining agreement as well as an agreement between the same parties effective for the overlapping period July 1, 1974 to June 30, 1976. Neither of these agreements is to be found in the record before us.

The Board rendered its decision accepting jurisdiction of the petition (Decision No. 58) on December 27, 1974, containing the following findings:

9. On July 1, 1972, the petitioner, the three employer-intervenors, the County of Maui and the UPW executed a collective bargaining agreement for Unit one. §16.09(d) of that agreement, dealing with the promotion of employees, stated "other factors being relatively equal, seniority shall prevail." On March 20, 1974, at the conclusion of reopener of negotiations over the terms of said agreement, §16.09(d) was renumbered and reworded as follows:

"16.6c. Whenever the qualifications between the qualified applicants are relatively equal the employee with the greatest length of Baseyard, Workplace or Institution Workplace seniority shall receive the promotion."

10. Prior to July 30, 1973, the petitioner promoted Cosme Rosete, Jr., to the position of Incinerator Plant Furnace Operator in lieu of Arthur Aiu. The UPW subsequently filed a grievance on behalf of Aiu charging that the Rosete promotion violated §16.09(d) of the contract. The grievance process was stalled after the third step and the petitioner then filed a request for a declaratory ruling on the legality of the contract provision in question.

By Decision No. 60, rendered February 13, 1975, the Board ruled that the seniority clause of the contract was not, on its face, in conflict with HRS § 89-9(d)[1] and was therefore

---

[1] HRS Chapter 89 authorizes and requires collective bargaining between governmental units and their employees. Collective bargaining agreements which are entered into in accordance with the provisions of the statute are declared to be valid

valid and enforceable. The findings of fact of Decision No. 58 were reiterated, with only the addition of a finding that the grievance arose under the earlier version of the contract, which version was the subject of the proceeding.

No additional evidence was presented to the circuit court and the findings of fact entered by the circuit court on November 3, 1975 paraphrase those of the Board, except that the circuit court also found:

1. The parties to the grievance were covered by a collective bargaining agreement which provided for final and binding arbitration.

The circuit court concluded that the parties were bound by the collective bargaining agreement to submit the dispute to an arbitrator, who should first determine that he has jurisdiction and, if he should so determine, should proceed to decide the matter on its merits, following which an appeal would lie to the circuit court in which the court might vacate the award if it should find that the arbitrator exceeded his powers by accepting the case and disregarding the proper interpretation of HRS § 89-9(d). The decision and ruling of the Board was reversed on the ground that the Board lacked jurisdiction to issue a ruling on the matter which was pending arbitration.

---

and enforceable. HRS § 89-10. At the time of entry of the decisions and orders of the Board from which the appeals were taken to the circuit court in this case, HRS § 89-9(d) read as follows:

(d) Excluded from the subjects of negotiations are matters of classification and reclassification, retirement benefits and the salary ranges and the number of incremental and longevity steps now provided by law, provided that the amount of wages to be paid in each range and step and the length of service necessary for the incremental and longevity steps shall be negotiable. The employer and the exclusive representative shall not agree to any proposal which would be inconsistent with merit principles or the principle of equal pay for equal work pursuant to sections 76-1, 76-2, 77-31 and 77-33, or which would interfere with the rights of a public employer to (1) direct employees; (2) determine qualification, standards for work, the nature and contents of examinations, hire, promote, transfer, assign, and retain employees in positions and suspend, demote, discharge, or take other disciplinary action against employees for proper cause; (3) relieve an employee from duties because of lack of work or other legitimate reason; (4) maintain efficiency of government operations; (5) determine methods, means, and personnel by which the employer's operations are to be conducted; and take such actions as may be necessary to carry out the missions of the employer in cases of emergencies.

I.

A threshold question is whether the case is properly before us on the Board's appeal from the judgment of the circuit court, no other party having appealed. The standing of an administrative agency to defend its orders by appeal from a judgment rendered upon judicial review has been questioned. Annot., Rights of public officers or board to appeal from a judicial decision affecting his or its order or decision, 117 A.L.R. 216 (1938); Jaffe, Judicial Control of Administrative Action 537 (1965). The question goes to our jurisdiction of the appeal and requires disposition, although not raised by the parties. *Cf. Wylly v. First Hawaiian Bank*, 57 Haw. 61, 549 P.2d 477 (1976). After considering supplemental briefs submitted by the parties we are satisfied that the Board is entitled to its appeal.

The circuit court acquired jurisdiction as the result of institution by C&C, HSTA and HGEA, pursuant to HRS § 91-14, of proceedings for review of the Board's decision. The Board was a party to those proceedings. Rule 72, H.R.C.P. The Board may appeal to this court from the judgment in those proceedings, however, only if it is an "aggrieved party." HRS § 91-15.

Cases denying standing to an administrative board to appeal an adverse judgment in judicial review proceedings derive their rationale by analogizing the status of the board to that of a court which has no interest in defending its own work. Jaffe, op. cit. 537. But an administrative board charged with implementing and enforcing a legislative mandate is in the performance of that duty significantly different from a court, although it may adjudicate the interests of parties before it. The board does not solely determine which of two contending parties shall prevail, but also determines the extent to which the parties before it shall be affected by the legislative mandate.

> An appeal from an administrative board is not the means by which jurisdiction of a cause is transferred from one tribunal to another, but is a process by which a court may be called upon, not to substitute its judgment for that of

the board, but to determine whether the latter has acted legally and in a proper exercise of the discretion vested in it.

*Rommell v. Walsh,* 15 A.2d 6, 9 (Conn. 1940).

An administrative board is thus aggrieved by a judgment rendered in judicial review of its order, where the effect of the judgment is to overturn a decision of the board with respect to the implementation of legislation entrusted to the board for administration. The fact that the decision is rendered in a quasi-judicial proceeding does not alter its character. The parties have directed our attention to a substantial body of authority which confirms the standing of an administrative board to appeal as an aggrieved party in such cases. *See, e.g., Rommell v. Walsh, supra, Board of Adjustment v. Stovall,* 216 S.W.2d 171 (Tex. 1949), *Altman v. School Committee,* 347 A.2d 37 (R.I. 1975); *In re Halifax Paper Company, Inc.,* 259 N.C. 589, 131 S.E.2d 441 (1963); *Koehn v. State Board of Equalization,* 326 P.2d 502 (Cal. 1958); *Boyd & Usher Transport v. Southern Tank Lines, Inc.,* 320 S.W.2d 120 (Ky. 1959); In re Foy, 116 P.2d 545 (Wash. 1941).

There remains for consideration whether the question of the Board's standing to appeal in this case is governed by that rationale. The decision of the Board was rendered pursuant to HRS § 91-8, which provides:

*Declaratory rulings by agencies.* Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedure for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

The proceedings before the Board were instituted by a petition for a declaratory order with respect to the validity of a provision of a collective bargaining agreement. Sec. 91-8 does not authorize an agency to determine private rights under contractual agreements generally. In order to fall within the scope of § 91-8, the question presented by the petition had to relate to a statutory provision or a rule or order of the Board.

The words "statutory provision" are limited by their context, and do not embrace every provision of the statute laws of the state. We think it is fairly implied, from the provision of § 91-8 giving orders disposing of petitions for declaratory orders the same status as other orders of the Board, that the question presented by the petition had to be one which would be relevant to some action which the Board might take in the exercise of the powers granted by Chapter 89. The applicability of § 89-9(d) to the collective bargaining agreement between C&C and UPW was thus before the Board in the context of the possible actions which the Board might take with reference to the disputed provision of the agreement.

The wilful failure of an employer to observe the terms of a collective bargaining agreement is defined by § 89-13(a)(8) as a prohibited practice, with respect to which § 89-5(b)(4) empowers the Board, upon complaints by employers, employees and employee organizations, to "take such actions with respect thereto as it deems necessary and proper." Since the meaning and effect of a provision of a collective bargaining agreement must be determined by the Board in the course of determining whether an employer is in violation of the agreement and is engaging in a prohibited practice, the meaning and effect of the agreement between C&C and UPW was a question which related to an action which the Board might take in the exercise of its powers. The applicability of § 89-9(d) to the collective bargaining agreement is therefore a question which was properly placed before the Board by the petition pursuant to § 91-8.

This analysis satisfies us that the Board was aggrieved by the judgment of the circuit court and was entitled to appeal to this court pursuant to § 91-15. The analysis is also relevant to the issue presented by the appeal, to which we now turn.

## II.

The question presented by the petition for declaratory ruling and upon which the Board ruled was whether HRS § 89-9(d) rendered invalid and ineffective an undertaking by C&C in the collective bargaining agreement with UPW that,

in the promotion of employees, "other factors being relatively equal, seniority shall prevail." The circuit court did not address the merits of this question, but ordered the Board to dismiss the petition for declaratory ruling because the court considered the Board to be ousted of jurisdiction by provisions of the agreement which were read by the court as requiring that the question be submitted to arbitration. These provisions are not in the record and we are unable to consider whether the circuit court was correct in its interpretation. However, the deficiency in the record is not significant, in the view we take of the case. Assuming, as the circuit court found, that the parties had agreed to be bound by the arbitrator's decision on the question, the circuit court nevertheless erred in holding that the Board was without jurisdiction to provide its ruling on the same question in response to the petition of C&C for a declaratory ruling.

As the analysis in part I shows, although § 91-8 may in a proper case provide a means of resolving interparty disputes, the statute is designed to provide a means for securing from an agency its interpretation of relevant statutes, rules and orders. The only parties necessary to a proceeding under § 91-8 are the petitioner and the agency. The declaratory ruling so obtained has effect only as an order of the agency. With respect to parties not before the agency in the proceeding upon the petition, the ruling does not adjudicate rights and interests to any greater extent than is possible by an ex parte interpretative order of the agency. These conclusions, we think, require no more validation than is provided by the face of the statute.

The declaratory ruling granted upon C&C's petition, therefore, expressed the Board's opinion that a violation of the seniority clause of the agreement by C&C would constitute a prohibited practice under § 89-13. We think it is not arguable that any collective bargaining agreement could deprive the Board of its statutory authority to take action with respect to prohibited practices, although the terms of existing agreements might well be relevant to the determination whether a prohibited practice existed. If the Board had jurisdiction to take action with respect to a prohibited practice, it

had jurisdiction to declare what would constitute a prohibited practice. The arguments advanced with respect to the effect of the arbitration provision, therefore, were for the consideration of the Board in arriving at its ruling and were not relevant to the question whether the Board had jurisdication of C&C's petition.[2]

The question of the effect of the pendency of C&C's petition for declaratory ruling upon the ongoing grievance procedure is not before us. Some of the arguments addressed to us seem, however, to assume that the Board could not take jurisdiction of the petition because to do so would interfere with the arbitration of the grievance. Conversely, it is argued by the Board that the question of the validity of the seniority clause was not subject to arbitration. We consider these arguments to be beside the point. We see nothing in the pendency of C&C's petition before the Board which relieved C&C from its obligation, if one existed, to proceed with the arbitration. The ruling of the Board might or might not have been significant to the outcome of the arbitration, just as the ruling of the arbitrator might or might not have been significant to the Board in determining its ruling. What questions were subject to arbitration is not, in our view, a factor in determining whether the question submitted to the Board by C&C's petition was within its jurisdiction under § 91-8.

Having determined erroneously that the Board did not have jurisdiction to render the decision appealed to it, the circuit court did not address the merits of the decision. The

---

[2] Whether a party to a collective bargaining agreement may maintain an action in court for a declaratory judgment with respect to the agreement, in the face of a stipulation that the question is to be submitted to an arbitrator for determination, is a quite different question. *Cf. Local Union 89 v. General Telephone Co. of Northwest,* 431 F.2d 957 (9th Cir. 1970); *United Insurance Co. of America v. Insurance Workers International Union,* 315 F. Supp. 1133 (E.D. Pa. 1970). Such an action seeks to adjudicate the rights of the parties under the agreement, in violation of its terms. C&C's petition for declaratory ruling sought only a disclosure of the interpretation which would guide the Board in the performance of its administrative function. Until its intervention, UPW was not a party to this proceeding and faced no risk that its rights under the agreement would be adjudicated. We need not consider whether this situation changed as a result of UPW's intervening in the proceeding before the Board. We think it is clear that UPW could not, by intervening, oust the Board of its jurisdiction to entertain the petition.

merits of the Board's decision have been briefed and argued, if at all, only tangentially on this appeal. Upon remand, the circuit court shall consider the issues, other than the issue of the Board's jurisdiction to entertain C&C's petition, which were brought before it by the review proceedings instituted by C&C, HSTA and HGEA.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

*Sonia Faust* for appellee-appellant, Hawaii Public Employment Relations Board.

*Benjamin C. Sigal (Shim, Sigal, Tam & Naito* of counsel) for appellee, Hawaii Government Employees' Association.

*James A. King (Bouslog & Symonds* of counsel) for appellee, United Public Workers.

*Thomas P. Gill (Gill, Park & Park* of counsel) for appellee, Hawaii State Teachers Association.