FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
29382
30-OCT-2013
08:51 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

IN THE MATTER OF UNITED PUBLIC WORKERS,
AFSCME, LOCAL 646, AFL-CIO, UNION, Petitioner-Appellant,
and NEIL ABERCROMBIE, Governor, State of Hawai'i, HAWAI'I
GOVERNMENT EMPLOYEES ASSOCIATION, AFSCME, LOCAL 152,
AFL-CIO, and KIRK CALDWELL, Mayor, City and County of Honolulu,
UNIVERSITY OF HAWAI'I PROFESSIONAL ASSEMBLY, and
COUNTY OF HAWAI'I (2007-003), Intervenors-Appellees
and HAWAI'I LABOR RELATIONS BOARD, Appellee-Appellee

NO. 29382

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-1265)

OCTOBER 30, 2013

NAKAMURA, CHIEF JUDGE, FOLEY AND LEONARD, JJ.

OPINION OF THE COURT BY LEONARD, J.

Petitioner-Appellant United Public Workers, AFSCME,
Local 646, AFL-CIO, Union (**UPW**) appeals from the Final Judgment
(**Judgment**) entered on September 29, 2008, by the Circuit Court of
the First Circuit (**Circuit Court**), and also challenges the
Circuit Court's Order Reversing Hawaii Labor Relations Board
Decision No. 470, Findings of Fact, Conclusions of Law, and
Declaratory Order (**Circuit Court Order**).[1]

---

1/     The Honorable Sabrina S. McKenna presided.

In this secondary appeal, UPW argues that the Circuit Court erred in reversing the declaratory ruling of the Hawaii Labor Relations Board (**Board** or **HLRB**) on the basis that the ruling exceeded the Board's jurisdiction. Because the Circuit Court ruled, in effect, that the Board had no jurisdiction to enter its Decision No. 470, Findings of Facts, Conclusions of Law, and Declaratory Order (**Decision No. 470**), the Circuit Court did not otherwise address the merits of Decision No. 470. Therefore, the central issue on this appeal is whether the Circuit Court erred when it concluded that the Board lacked jurisdiction to enter a ruling on the UPW petition underlying Decision No. 470, which sought a declaratory ruling concerning whether certain conduct by public employers constituted "prohibited practices" under Hawaii's public sector collective bargaining law. We conclude that the HLRB had jurisdiction over UPW's petition and therefore vacate the Circuit Court Order and Judgment.

I.   STATUTORY AND REGULATORY FRAMEWORK

Hawaii's public sector collective bargaining law is codified at Hawaii Revised Statutes (**HRS**) Chapter 89. This chapter, *inter alia*, provides public employees with the right of self-organization; the right to collectively bargain on wages, hours, and other terms and conditions of employment; and the right to a grievance procedure. HRS §§ 89-3 (2012); 89-10.8 (2012). It also sets forth a number of "prohibited practices," making it unlawful, *inter alia*, for public employers to wilfully "[i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter." HRS § 89-13(a)(1) (2012).

With the enactment of Chapter 89, the Hawai'i Legislature tasked the HLRB with the administration of the public sector collective bargaining law. See generally HRS 89-5(i) (2012). In addition to its other powers and functions, the HLRB has exclusive original jurisdiction over any controversy concerning prohibited practices. More specifically, HRS § 89-14 (2012) provides:

§ 89-14 Prevention of prohibited practices. Any controversy concerning prohibited practices may be submitted to the [HLRB] in the same manner and with the same effect as provided in section 377-9; provided that the [HLRB] shall have exclusive original jurisdiction over such a controversy except that nothing herein shall preclude (1) the institution of appropriate proceedings in circuit court pursuant to section 89-12(c) or (2) the judicial review of decisions or orders of the [HLRB] in prohibited practice controversies in accordance with section 377-9 and chapter 91. All references in section 377-9 to 'labor organization' shall include employee organization.

As stated, controversies concerning prohibited practices are to be submitted to the HLRB "in the same manner and with the same effect" as an unfair labor practice controversy, the procedures for which are set forth in HRS § 377-9 as follows:

(b) Any party in interest may file with the board a written complaint, on a form provided by the board, charging any person with having engaged in any specific unfair labor practice. The board shall serve a copy of the complaint upon the person charged, hereinafter referred to as the respondent. If the board has reasonable cause to believe that the respondent is a member of or represented by a labor union, then service upon an officer of the union shall be deemed to be service upon the respondent. . . . Any other person claiming interest in the dispute or controversy, as an employer, an employee or their representative, shall be made a party upon proof of the interest. The board may bring in additional parties by service of a copy of the complaint. Only one complaint shall issue against a person with respect to a single controversy, but any complaint may be amended in the discretion of the board at any time prior to the issuance of a final order based thereon. The respondent may file an answer to the original or amended complaint but the board may find to be true any allegation in the complaint in the event either no answer is filed or the answer neither specifically denies nor explains the allegation nor states that the respondent is without knowledge concerning the allegation. The respondent shall have the right to appear in person or otherwise give testimony at the place and time fixed in the notice of hearing. The hearing on the complaint shall be before either the board or a hearings officer of the board, as the board may determine.

. . . .

(d) After the final hearing, the board shall promptly make and file an order or decision, incorporating findings of fact upon all the issues involved in the controversy and the determination of the rights of the parties. Pending the final determination of the controversy the board may, after hearing, make interlocutory orders which may be enforced in the same manner as final orders. Final orders may dismiss the complaint or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend the person's rights, immunities, privileges, or remedies granted or afforded by this chapter for not more than one year, and require the person to take affirmative action, including reinstatement of employees *and*

*make orders in favor of employees making them whole, including back pay with interest, costs, and attorneys' fees.* Any order may further require the person to make reports from time to time showing the extent to which the person has complied with the order. *Furthermore, an employer or employee who wilfully or repeatedly commits unfair or prohibited practices that interfere with the statutory rights of an employer or employees or discriminates against an employer or employees for the exercise of protected conduct shall be subject to a civil penalty not to exceed $10,000 for each violation. In determining the amount of any penalty under this section, the board shall consider the gravity of the unfair or prohibited practice and the impact of the practice on the charging party, on other persons seeking to exercise rights guaranteed by this section, or on public interest.*

. . . .

(f) Any person aggrieved by the decision or order of the board may obtain a review thereof as provided in chapter 91 by instituting proceedings in the circuit court of the judicial circuit in which the person or any party resides or transacts business [.] . . . The petition shall state the grounds upon which a review is sought and copies thereof shall be served upon the other parties and the board. . . . Upon the hearing, the court may confirm, modify, or set aside the decision or order of the board and enter an appropriate decree. No objection that has not been urged before the board shall be considered by the court unless the failure or neglect to urge the objection shall be excused because of extraordinary circumstances.

(g) In any proceedings for review of a decision or order of the board, the judge shall disregard any irregularity or error unless it is made to appear affirmatively that the complaining party was prejudiced thereby.

(h) Commencement of proceedings under subsection (f) of this section shall not stay enforcement of the board decisions or order; but the board, or the reviewing court may order a stay upon such terms as it deems proper.

. . . .

(j) Any party may appeal from the judgment of a circuit court entered under this chapter, *subject to chapter 602, in the manner provided for civil appeals from the circuit courts.*

(k) A substantial compliance with the procedure of this chapter shall be sufficient to give effect to the decisions and orders of the board, and they shall not be declared inoperative, illegal, or void for any nonprejudicial irregularity in respect thereof.

(l) No complaints of any specific unfair labor practice shall be considered unless filed within ninety days of its occurrence.

HRS § 377-9 (2012) (emphasis added with bolded and underlined text; italicized text indicates modifications and/or additions to

the statute subsequent to the proceedings at issue in this case; these amendments are not relevant to this appeal).

Another key statutory provision is found in Hawai'i's Administrative Procedures Act, specifically HRS § 91-8 (2012), which provides:

> § 91-8 **Declaratory rulings by agencies.** Any interested person may petition an agency for a declaratory order as to the applicability of any statutory provision or of any rule or order of the agency. Each agency shall adopt rules prescribing the form of the petitions and the procedures for their submission, consideration, and prompt disposition. Orders disposing of petitions in such cases shall have the same status as other agency orders.

Administrative rules promulgated to govern the proceedings before the HRLB include:

> § 12-42-9 <u>Declaratory rulings by the board.</u> (a) Any public employee, employee organization, public employer, or interested person or organization may petition the board for a declaratory order as to the applicability of any statutory provision or of any rule or order of the board.
>
> (b) The petition shall be prepared on a form furnished by the board, and the original and five copies shall be filed with the board.
>
> (c) The petition shall contain the following:
> (1) The name, address, and telephone number of the petitioner.
> (2) A statement of the nature of the petitioner's interest, including reasons for submission of the petition.
> (3) A designation of the specific provision, rule, or order in question.
> (4) A clear and concise statement of the position or contention of the petitioner.
> (5) A memorandum of authorities, containing a full discussion of the reasons, including legal authorities, in support of such position or contention.
> (6) The signature of each petitioner.
>
> (d) Any petition which does not conform to the foregoing requirements may be rejected.
>
> (e) Any party may intervene subject to the provisions of section 12-42-8(g)(14) insofar as they are applicable.
>
> (f) The board may, for good cause, refuse to issue a declaratory order. Without limiting the generality of the foregoing, the board may so refuse where:
> (1) The question is speculative or purely hypothetical and does not involve existing facts or facts which can reasonably be expected to exist in the near future.
> (2) The petitioner's interest is not of the type which would give the petitioner standing to

maintain an action if such petitioner were
to seek judicial relief.

(3)    The issuance of the declaratory order may
adversely affect the interests of the board or
any of its officers or employees in a litigation
which is pending or may reasonably be expected
to arise.

(4)    The matter is not within the jurisdiction of the
board.

(g) The board shall consider each petition submitted
and, within a reasonable time after the submission thereof,
either deny the petition in writing, stating its reason for
such denial, or issue a declaratory order on the matters
contained in the petition.

(h)   Hearing:

. . . .

(i)  <u>An order disposing of a petition shall be
applicable only to the factual situation alleged in the
petition or set forth in the order. The order shall not be
applicable to different factual situations or where
additional facts not considered in the order exist.</u>  Such
order shall have the same force and effect as other orders
issued by the board. [Eff. Feb. 6, 1981] (Auth: HRS §89-5)
(Imp: HRS §§89-5, 91-8)

Hawaii Administrative Rules (**HAR**) § 12-42-9 (emphasis added).

It is within this statutory and regulatory framework
that we analyze the Circuit Court Order reversing Decision No.
470 "because the Board exceeded its authority."

II.   RELEVANT BACKGROUND FACTS

A.   HLRB Proceedings

UPW filed an HRLB-12 Petition for a Declaratory Ruling
(**Petition**), in the format required by HAR § 12-42-9(b) & (c), on
January 23, 2007. Various parties intervened, including
Intervenors-Appellees Neil Abercrombie, Governor, State of
Hawai'i (**State**), and Kirk Caldwell, Mayor, City and County of
Honolulu (**City**) (collectively, **Employers**).[2] This initial
Petition sought an order regarding the "[s]ubpoena duces tecums
issued by public employers," which UPW alleged to have a
"chilling effect on the rights of public employees in violation
of Section 89-3, HRS." At a hearing held on February 21, 2007,
the HLRB expressed concern regarding its jurisdiction in the

---

[2]     Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule
43(c), current officeholders have been automatically substituted for former
public officials who are no longer in office.

matter and invited UPW to file an amended petition to clarify the focus and scope of the Petition. On February 28, 2007, the State filed a Motion to Dismiss Petition for Declaratory Ruling, arguing that the HLRB lacked jurisdiction to decide the matter because (1) the Petition essentially sought a ruling on subpoenas issued by arbitrators and courts, over which the HLRB had no authority; and (2) the factual basis for the Petition was speculative and involved facts which could not reasonably be expected to exist in the near future.

A First Amended HLRB-12 Petition was filed on March 12, 2007 (**Amended Petition**). The factual premise upon which the Amended Petition was based, captioned in the HLRB-provided form as "the nature of Petitioner's interest, including the reasons for the submission of the Petition", alleged:

> Petitioner is the exclusive representative of blue-collar non-supervisory employees in bargaining unit 1, and institutional health and correctional workers in bargaining unit 10. The petition is being submitted because petitioner has been served with a number of subpoena duces tecums from public employers which seek records of union grievances, investigations of union grievances, union membership and union activities, and other concerted activities by employees for the purpose of collective bargaining and other mutual aid and protection. See Attachments 1 through 5.[3]

The Amended Petition stated its contentions and request for declaratory relief as follows:

> Public employers may not seek or obtain records of union grievances, investigations of union grievances, union membership and union activities, and concerted activities by employees for the purpose of collective bargaining and other mutual aid and protection because such conduct has a chilling effect on the rights of public employees in violation of Section 89-3, HRS. Under Section 89-3, HRS, public employees should be free to join and assist any employee organization, and to engage in lawful concerted activities for the purpose of collective bargaining and mutual aid and protection without interference, restraint, or coercion from public employers.
>
> Accordingly, petitioner seeks a declaratory order as to the applicability of Section 89-3, HRS, and Section 89-13(a)(1), HRS, to the aforementioned public employer conduct which interferes, restrains, and coerces employees engaged in protected activities guaranteed under Chapter 89.

---

[3] The referenced attachments consisted of subpoenas duces tecum that had been served on UPW in conjunction with various arbitration and litigation matters.

See Decision and Order by Arbitrator Mario Ramil in United Public Workers, AFSCME, Local 646, AFL-CIO v. State of Hawaii Department of Public Safety (Case No. LK-04-34) dated July 3, 2005 (Attachment 6); and Order by Arbitrator Paul Aoki in United Public Workers, AFSCME, Local 646, AFL-CIO v. State of Hawaii, Department of Public Safety (Case No. CU-04-19 to CU-04-45) dated August 18, 2005 (Attachment 7).

At a hearing held on March 20, 2007, the HLRB orally denied the State's motion to dismiss. A majority of the Board concluded that the Petition concerned the interpretation of employees' rights under HRS § 89-3 and was thus within the Board's jurisdiction. It resolved to proceed on the "almost pure legal question about [public employees'] rights under 89-3."

In opposing the merits of the Amended Petition, the Employers again argued that the HLRB lacked jurisdiction because (1) the Amended Petition effectively sought to limit the Employers' discovery rights in various forums over which the Board had no authority; and (2) it sought a "blanket rule" requiring the creation of a union work product privilege. UPW maintained that the HLRB had a jurisdictional mandate to interpret and apply the scope of prohibited practices under HRS §§ 89-3 and 89-13.

The HLRB issued Decision No. 470 on June 29, 2007. In Decision No. 470, the HLRB entered Findings of Fact regarding various specific instances in which the Employers had issued subpoenas duces tecum to UPW in the course of certain grievance arbitrations. The HLRB then promulgated a "Discussion" of the "almost axiomatic tautological question" presented by UPW's Amended Petition. In this Discussion, which we need not recount in detail in this review of the HLRB's jurisdiction, the Board majority examined the rationale applied in the grievance arbitrations reviewed in its Findings of Fact, as well as earlier Board rulings brought to its attention by the Employers. The Discussion ended, however, with a broadly-worded summary that appears to be ungrounded in factual circumstances at hand:

> [I]n response to the UPW's inquiry regarding the compelled disclosure of union information, the Board majority reaches three conclusions: 1) Employer demands which infringe upon rights protected by Chapter 89 will constitute prohibited practices, 2) pretrial discovery and disclosure must be evaluated pursuant to the provisions of

HRCP Rule 26 and, 3) any conclusion of a prohibited practice resulting from an employer information demand will be made pursuant to fact specific showings thereof.

Decision No. 470 then sets forth nine Conclusions of Law, including:

1. The Board has jurisdiction over this petition pursuant to HRS §§ 89-5(b)(5) and 91-8 and HAR § 12-42-9.

2. HRS § 89-13(a)(13) provides as follows:
   (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:
      (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter; . . . .

3. HRS § 89-3 provides as follows:
   Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, including retiree health benefit contributions, and to engage[] in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection, free from interference, restraint, or coercion. An employee shall have the right to refrain from any or all of such activities, except for having a payroll deduction equivalent to regular dues remitted to an exclusive representative.

4. Employer conduct that interferes with, restrains, or coerces employees in the exercise of the rights set forth in HRS § 89-3 violates HRS § 89-13(a)(1). The test is whether the employer engaged in conduct reasonably tending to interfere with the free exercise of employee rights. . . .

. . . .

8. The Board has held that [an] employee's right to pursue and correct a grievance has been held to constitute lawful protected activity. . . .

9. When an employer seeks to obtain records of union grievances, investigations of employee discipline, or notes of union stewards' and business agents' conversations with employees in the course of union representation, these actions may unduly interfere, restrain or coerce employees in the free exercise of their statutory rights. Similarly, subpoenas for records of union membership likewise may interfere with the employee's right to engage in concerted activity.

Finally, Decision No. 470 concludes with the following Declaratory Order:

Public employer efforts to obtain records of union grievances, investigations o[f] union grievances, union membership records, and other concerted activities of

9

bargaining unit employees have a tendency to interfere, restrain and coerce employees in the free exercise of rights under HRS § 89-3 and in the proper case may constitute a prohibited practice violative of HRS § 89-13(a)(1).

B.    The Circuit Court Proceedings

The State timely filed a notice of appeal to the Circuit Court. The City filed a Joinder in the State's appeal (and its briefs).[4] In the Circuit Court proceedings, the Employers contended that the Board's Decision No. 470 should be reversed and/or vacated based on the following contentions: (1) the Board failed to issue a written order denying the State's motion to dismiss the Petition, and failed to file separate findings of fact and conclusions of law as to why the motion to dismiss was denied, in violation of HAR § 12-42-8(g); (2) the Board exceeded its statutory authority or jurisdiction by issuing a ruling that usurped the jurisdiction of arbitrators and courts in issuing subpoenas, and regulating discovery, and the Board does not have jurisdiction to rule upon the applicability of a privilege or the scope of discovery allowed in arbitrations or court proceedings; (3) the Board exceeded its authority by instituting a blanket prohibition to prevent a party from seeking and obtaining certain records in the context of arbitration or civil proceedings, and would thus usurp the authority of the arbitrators or courts, which is beyond the Board's jurisdiction; and (4) the Board erred in failing to grant the State's motion to dismiss the Petition for the reasons set forth therein, including that the matter was not within the jurisdiction of the Board.

After further briefing by all parties, including answering briefs by UPW and others, the Circuit Court held oral argument, and thereafter issued the Circuit Court Order, which simply stated:

> IT IS HEREBY ORDERED that the Hawai'i Labor Relations Board Decision No. 470, Findings of Fact, Conclusions of Law, and Declaratory Order, dated June 29, 2007, is reversed because the Board exceeded its authority.

---

[4]    The County of Hawaii also filed a joinder in the appeal and in the State's opening brief.

After an initial notice of appeal was dismissed for lack of appellate jurisdiction, the Judgment was entered on September 29, 2008, and a notice of appeal was timely filed.

III. POINTS OF ERROR

On appeal to this court, UPW raises four points of error, contending that the Circuit Court: (1) exceeded the permissible scope of judicial review by refusing to defer to the Board's discretionary determination and to afford persuasive weight to its construction of the relevant statutes; (2) erred by reversing an agency decision which was not "palpably erroneous" or inconsistent with the underlying purposes of HRS §§ 89-3 and 89-13(a)(1); (3) erred when it determined that the HLRB exceeded its authority by applying Decision No. 470 beyond factual circumstances presented in the Amended Petition; and (4) erred when it determined that the HLRB lacked exclusive original jurisdiction to determine a controversy over prohibited practices by employers.

IV. APPLICABLE STANDARDS OF REVIEW

This court's review of a circuit court decision reviewing an agency determination is a secondary appeal. Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of the City & Cnty. of Honolulu (CARD), 114 Hawai'i 184, 193, 159 P.3d 143, 152 (2007). For secondary appeals,

> [t]he standard of review is one in which [the appellate]
> court must determine whether the circuit court was right or
> wrong in its decision, applying the standards set forth in
> HRS § 91-14(g) [(1993)] to the agency's decision.
>
> HRS § 91-14, entitled "Judicial review of contested cases,"
> provides in relevant part:
>
> (g) Upon review of the record the court may affirm
> the decision of the agency or remand the case with
> instructions for further proceedings; or it may reverse or
> modify the decision and order if the substantial rights of
> the petitioners may have been prejudiced because the
> administrative findings, conclusions, decisions, or orders
> are:
> (1) In violation of constitutional or statutory
>     provisions; or
> (2) In excess of the statutory authority or jurisdiction
>     of the agency; or
> (3) Made upon unlawful procedure; or
> (4) Affected by other error of law; or
> (5) Clearly erroneous in view of the reliable, probative,
>     and substantial evidence on the whole record; or

> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> [U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

Id. (citations and internal quotation marks omitted; some brackets in original and some added).

Courts apply a deferential standard of review to agency decisions in the following situation:

> [W]hen reviewing a determination of an administrative agency, we first decide whether the legislature granted the agency discretion to make the determination being reviewed. If the legislature has granted the agency discretion over a particular matter, then we review the agency's action pursuant to the deferential abuse of discretion standard (bearing in mind the legislature determines the boundaries of that discretion). If the legislature has not granted the agency discretion over a particular matter, then the agency's conclusions are subject to *de novo* review.

Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 419-20, 91 P.3d 494, 501-02 (2004).

However, we reject UPW's argument that the issue of the HLRB's jurisdiction is subject to the "palpably erroneous," clearly erroneous, or other deferential standard of review. An administrative agency may only "wield powers expressly or implicitly granted to it by statute." TIG Ins. Co. v. Kauhane, 101 Hawai'i 311, 327, 67 P.3d 810, 826 (App. 2003). Thus an agency's conclusions of law "are freely reviewable to determine if the agency's decision was in violation of constitutional or statutory provisions, *in excess of statutory authority or jurisdiction of [the] agency*, or affected by other error of law." Poe v. Hawai'i Labor Relations Bd., 87 Hawai'i 191, 195, 953 P.2d 569, 573 (1998) (emphasis added). "If an agency determination is not within its realm of discretion (as defined by the legislature), then the agency's determination is not entitled to the deferential 'abuse of discretion' standard of review." Paul's Elec. Serv., 104 Hawai'i at 417, 91 P.3d at 499.

Accordingly, UPW's second point of error is without merit; the Circuit Court did not err when it reviewed, as a matter of law, whether the HLRB's Decision No. 470 was in excess of the HLRB's statutory authority or jurisdiction.

UPW's first point of error must be similarly addressed. To the extent that UPW argues that the Circuit Court "exceeded the permissible scope of judicial review" by reviewing whether the HLRB exceeded its statutory authority or jurisdiction, UPW's point is without merit. We note, however, in light of the fact that the Circuit Court concluded that the HLRB had no jurisdiction over the matters raised in the Amended Petition, the Circuit Court simply did not conduct a substantive review of the HLRB's determinations and neither afforded nor denied "persuasive weight to its construction of the relevant statutes."

V. DISCUSSION

Having disposed of UPW's first two points of error in conjunction with our analysis of the applicable standard of review, we turn to its remaining two contentions - albeit reordered: (1) that the Circuit Court erred when it determined that the HLRB lacked exclusive original jurisdiction to determine a controversy over prohibited practices by employers; and (2) that the Circuit Court erred when it determined that the HLRB exceeded its authority by applying Decision No. 470 beyond the factual circumstances presented in the Amended Petition. We agree with the first of these two contentions, but we do not reach the merits of the second one.

A. The HLRB's Exclusive Jurisdiction

HRS § 89-14 expressly provides that the HLRB has "exclusive original jurisdiction" over "[a]ny controversy concerning prohibited practices."[5] HRS § 91-8 establishes the

_____

[5] When originally enacted, HRS § 89-14 did not expressly provide for the Board's *exclusive* original jurisdiction. In Winslow v. State, 2 Haw. App. 50, 56, 625 P.2d 1046, 1051 (App. 1981), this court examined the text of the statute and concluded that the legislature did not intend that the Board's

(continued...)

HLRB's authority to issue declaratory rulings "as to the applicability of any statutory provision." The administrative rules adopted by the HLRB give further context to the statutory framework:

> An order disposing of a petition [for a declaratory ruling] shall be applicable only to the factual situation alleged in the petition or set forth in the order. The order shall not be applicable to different factual situations or where additional facts not considered in the order exist. . . .

HAR § 12-42-9(i).

The HRLB's jurisdiction clearly extends to determining whether, in a particular instance, specified employer conduct constitutes a "prohibited practice" under HRS § 89-13. See Fasi v. State Pub. Emp't Relations Bd., 60 Haw. 436, 444-45, 591 P.2d 113, 118 (1979). In Fasi, the Hawai'i Supreme Court examined the Board's jurisdiction to make a declaratory ruling on whether a seniority clause in a collective bargaining agreement would constitute a violation of HRS § 89-9(d). Id. at 438, 591 P.2d at 114. It had been stipulated by parties that, prior to the employer's filing of a petition for declaratory ruling, a grievance had been initiated concerning whether the employer (the City) had violated the collective bargaining agreement. Id. Arbitration had been demanded by the union. Id. at 438-39, 591 P.2d at 114-15. The Board nevertheless entered a decision accepting jurisdiction over the matter and ruled that the seniority provision in the collective bargaining agreement was not in violation of HRS § 89-9(d). Id. at 438-39, 591 P.2d at 114-15. On appeal, the circuit court concluded that the parties were bound to submit the dispute to arbitration, and the court

_____

(...continued)
jurisdiction over prohibited practice controversies would be exclusive. In 1982, the legislature amended the statute to supersede Winslow and clarify that the Board's original jurisdiction is exclusive. 1982 Haw. Sess. Laws Act 27, § 1 at 38; H. Stand. Comm. Rep. No. 134-82, in 1982 House Journal, at 943 ("By making the jurisdiction of [the Board] exclusive in controversies concerning prohibited practices, this bill legislatively rectifies or overrules the juridical conclusion or statutory construction enunciated in Winslow v. State of Hawaii.") (emphasis in original).

reversed the ruling of the Board on the ground that the Board lacked jurisdiction because the matter was pending a determination in the arbitration. Id. at 440, 591 P.2d at 116.

On the secondary appeal, the supreme court considered, *inter alia*, whether the City's petition for a declaratory ruling fell within the scope of HRS § 91-8. It answered that query affirmatively by reference to the Board's authority over prohibited practices:

> We think it is fairly implied, from the provision of § 91-8 giving orders disposing of petitions for declaratory orders the same status as other orders of the Board, that the question presented by the petition had to be one which would be relevant to some action which the Board might take in the exercise of the powers granted by Chapter 89. The applicability of § 89-9(d) to the collective bargaining agreement between [the City] and UPW was thus before the Board in the context of the possible actions which the Board might take with reference to the disputed provision of the agreement.
>
> The wilful failure of an employer to observe the terms of a collective bargaining agreement is defined by § 89-13(a)(8) as a prohibited practice, with respect to which § 89-5(b)(4) empowers the Board, upon complaints by employers, employees and employee organizations, to 'take such actions with respect thereto as it deems necessary and proper.' Since the meaning and effect of a provision of a collective bargaining agreement must be determined by the Board in the course of determining whether an employer is in violation of the agreement and is engaging in a prohibited practice, the meaning and effect of the agreement between [the City] and UPW was a question which related to an action which the Board might take in the exercise of its powers. The applicability of § 89-9(d) to the collective bargaining agreement is therefore a question which was properly placed before the Board by the petition pursuant to § 91-8.

Id. at 443, 593 P.2d at 117-18.

Moreover, the supreme court held that the circuit court erred in holding that the Board was without jurisdiction to rule on the petition, even if the parties were required to submit the question to arbitration. Id. at 444, 593 P.2d at 118. The supreme court explained its reasoning by reference to the limited applicability of the Board's declaratory ruling:

> [A]lthough § 91-8 may in a proper case provide a means of resolving interparty disputes, the statute is designed to provide a means for securing from an agency its interpretation of relevant statutes, rules and orders. The only parties necessary to a proceeding under § 91-8 are the

> petitioner and the agency.  The declaratory ruling so obtained has effect only as an order of the agency.  With respect to parties not before the agency in the proceeding upon the petition, the ruling does not adjudicate rights and interests to any greater extent than is possible by an ex parte interpretative order of the agency. These conclusions, we think, require no more validation than is provided by the face of the statute.
>
> The declaratory ruling granted upon [the City's] petition, therefore, expressed the Board's opinion that a violation of the seniority clause of the agreement by [the City] would constitute a prohibited practice under § 89-13. We think it is not arguable that any collective bargaining agreement could deprive the Board of its statutory authority to take action with respect to prohibited practices, although the terms of existing agreements might well be relevant to the determination whether a prohibited practice existed.  If the Board had jurisdiction to take action with respect to a prohibited practice, it had jurisdiction to declare what would constitute a prohibited practice.  The arguments advanced with respect to the effect of the arbitration provision, therefore, were for the consideration of the Board in arriving at its ruling and were not relevant to the question whether the Board had jurisdiction of [the City's] petition.

Id. at 444-45, 593 P.2d at 118.

The supreme court thus determined that the Board had jurisdiction to declare whether the particular action presented in the petition might constitute a prohibited practice, because the Board has the authority to take action with respect to prohibited practices.  While noting the limited effect of such a ruling, the supreme court viewed this action as being within the jurisdiction of the Board, regardless of whether the same question was or was not subject to arbitration, and regardless of whether the Board's ruling might or might not have been significant to the outcome of the arbitration.  Id. at 445, 593 P.2d at 118.

A more recent case further illuminates the HLRB's exclusive original jurisdiction over controversies concerning prohibited practices.  Hawaii Gov't Emps. Ass'n, Local 152 v. Lingle, 124 Hawai'i 197, 239 P.3d 1 (2010) (hereinafter "HGEA v. Lingle").  There, the union filed a complaint in circuit court alleging that the State's unilateral imposition of furloughs violated the Hawai'i Constitution.  Id. at 200, 239 P.3d at 4.

The State maintained that the union's assertions amounted to prohibited practice complaints that fell within the HLRB's exclusive original jurisdiction. Id. at 201, 239 P.3d at 5. The supreme court agreed that because the complaints essentially asserted prohibited practice allegations, "original jurisdiction in this case properly resided with the HLRB and not the circuit court." Id. at 202, 239 P.3d at 6.

The legislature has thus delegated to the HLRB exclusive original jurisdiction over controversies surrounding prohibited practices. Fasi, 60 Haw. at 444-45, 591 P.2d at 118. This includes "those powers which are reasonably necessary" to make its jurisdiction effective. In re Hawai‘i Gov't Emps. Ass'n, Local 152, 116 Hawai‘i 73, 97, 170 P.3d 324, 348 (2007) (hereinafter "In re HGEA") (citations and internal quotation marks omitted). The HLRB has jurisdiction to interpret and apply HRS § 89-13(a)(1) through a declaratory ruling to determine what constitutes a prohibited practice. Fasi, 60 Haw. at 444-45, 591 P.2d at 118; see also Lepere v. United Public Workers, Local 646, 77 Hawai‘i 471, 475, 887 P.2d 1029, 1033 (1995) (affirming that original jurisdiction over union member's complaint against public employer resided in HLRB, not circuit court); United Public Workers, Local 646 v. Watada, No. 29410, at 4-5 (App. June 24, 2010) (holding that HLRB's original jurisdiction over prohibited practice claims is mandatory).

Here, UPW's Amended Petition sought, at least in part, a declaratory ruling that the Employers' service of the particular subpoenas duces tecum referenced in and attached to the Amended Petition interfered with, restrained, and otherwise violated the specified employees' rights under HRS § 89-3, and therefore constituted prohibited practices pursuant to HRS § 89-13(a)(1). Without question, based on such allegations, the Board would have had jurisdiction to take action with respect to a prohibited practices complaint filed in accordance with HRS

17

§§ 89-14 and 377-9.[6] Accordingly, as the supreme court concluded in Fasi, we conclude that the HRLB had jurisdiction to declare whether the factual circumstances presented to it on the UPW's Amended Petition would constitute a prohibited practice. As the supreme court observed in Fasi, any effect of such a ruling is necessarily limited to those particular factual circumstances, and the HLRB's jurisdiction to decide whether a particular action constitutes a prohibited practice is not affected by the fact that the propriety of the same underlying action might also be decided in an arbitration or other forum. Fasi, 60 Haw. at 445, 591 P.2d at 118. Given that the Circuit Court reversed Decision No. 470 in its entirety based on the ground that the HRLB exceeded its authority, it is apparent that the Circuit Court concluded that the HLRB had no jurisdiction over the Amended Petition. The Circuit Court erred in concluding that the HLRB was without jurisdiction over UPW's Amended Petition for a declaratory ruling.

B.      Remaining Point of Error on this Appeal

UPW also contends that the Circuit Court erred when it determined that the HRLB exceeded its authority by applying Decision No. 470 beyond the factual circumstances presented in the Amended Petition. However, we do not reach this issue because, having determined erroneously that the HLRB did not have jurisdiction over UPW's Amended Petition, the Circuit Court did not address the merits of the State's other challenges to Decision No. 470. Upon remand, the Circuit Court shall consider the issues, other than the issue of the HLRB's jurisdiction to entertain UPW's Amended Petition, which were brought before it by the appeal instituted by the State. See Fasi, 60 Haw. at 445-46, 591 P.2d at 118.

_____

[6]     To be clear, recognition of the Board's jurisdiction over the matter is not intended to as a comment on the merits of the allegations.

VI.   CONCLUSION

For these reasons, the Circuit Court's September 29, 2008 Judgment is vacated and this case is remanded for further proceedings consistent with this Opinion.

On the briefs:

Herbert R. Takahashi
Danny J. Vasconcellos
Rebecca L. Covert
(Takahashi, Vasconcellos
 & Covert)
for Petitioner-Appellant

James E. Halvorson
Jeffrey A. Keating
Deputy Attorneys General
for Intervenor-Appellee
NEIL ABERCROMBIE, Governor,
State of Hawai'i

Diane A. Noda
Joseph K. Kamelamela
Deputies Corporation Counsel
County of Hawai'i
for Intervenor-Appellee
COUNTY OF HAWAI'I

John S. Mukai
Deputy Corporation Counsel
City and County of Honolulu
for Intervenor-Appellee
KIRK CALDWELL, Mayor,
City and County of Honolulu