**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000643
29-DEC-2023
07:59 AM
Dkt. 86 MO**

NO. CAAP-19-0000643

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAII ORGANIZATION OF POLICE OFFICERS (SHOPO),
Complainant-Appellant-Appellant,
v.
HAWAI'I LABOR RELATIONS BOARD; MARCUS R. OSHIRO; SESNITA A.D.
MOEPONO; and STACY MONIZ,[1] Agency-Appellees-Appellees,
and
ARTHUR "JOE" LOGAN, CHIEF OF POLICE OF THE HONOLULU POLICE
DEPARTMENT, CITY AND COUNTY OF HONOLULU,
Respondents-Appellees-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC191000270)


**MEMORANDUM OPINION**
(By: Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

The State of Hawaii Organization of Police Officers
(**SHOPO**) filed a **Prohibited Practices Complaint** against Susan
**Ballard** (in her official capacity as chief of the Honolulu Police
Department)[2] and the **City** and County of Honolulu with the Hawai'i

---

[1] Under Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 43(c), a public officer named in a case is automatically substituted by the officer's successor when the holder of the office ceases to hold office on appeal. Accordingly, Hawai'i Labor Relations Board Employer member Stacy Moniz has been substituted for former HLRB member J.N. Musto.

[2] Official-capacity suits are a way of pleading an action against the entity of which the officer is an agent. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). Ballard and the City and County of Honolulu will collectively be referred to as the "City." The
(continued...)

Labor Relations Board (**HLRB** or **Board**). HLRB granted the City's motion for judgment on partial findings. SHOPO appealed to the Circuit Court of the First Circuit.[3] The circuit court affirmed HLRB. SHOPO filed this secondary appeal.[4] We affirm.

## I. BACKGROUND

Ballard was sworn in as chief of the Honolulu Police Department (**HPD**) on November 1, 2017. On November 3, 2017, all three members of HPD's Peer Support Unit were notified they were being assigned to different units. Sergeant Tenari **Maʻafala** (supervising the unit as acting lieutenant) was reassigned to District 6 (Waikīkī); Officer Don **Faumuina** was reassigned to District 1 (Honolulu); and Sergeant Michael **Tamashiro** was reassigned to the Criminal Investigative Division (detectives). Ballard transferred command of the Peer Support Unit from the Chief's Office to the Community Affairs Division. Full-time staffing for the Peer Support Unit was eliminated; the commander of the Community Affairs Division was to contact unit volunteers or police chaplains to respond to critical incidents.

Later in November, Chief Ballard reassigned ten officers from the Criminal Intelligence Unit,[5] replaced them with other officers, and renamed it the Intelligence Enforcement Unit. Among those assigned out of the unit were Sergeant Malcolm **Lutu**, who was reassigned to the Criminal Investigative Division; and Lieutenant Michael **Cusumano**, who was reassigned to the Central Receiving Desk.

---

[2] (...continued) current chief of the Honolulu Police Department, Arthur "Joe" Logan, has been automatically substituted as Respondent-Appellee-Appellee in place of Susan Ballard under HRAP Rule 43(c)(1).

[3] The Honorable James H. Ashford presided.

[4] HLRB, a nominal appellee, did not participate in briefing.

[5] The Criminal Intelligence Unit, part of the Chief's Office, had come under public scrutiny because of the federal indictment of former chief Louis Kealoha and some members of the unit. See City & Cnty. of Honolulu v. Honolulu Police Comm'n, 152 Hawaiʻi 268, 526 P.3d 245 (2023).

Each of the reassigned police officers was a member of collective bargaining Unit 12, under Hawaii Revised Statutes (**HRS**) § 89-6(a)(12). Each officer was also a SHOPO official. SHOPO is the HRS § 89-8 certified exclusive collective bargaining representative for police officers who are members of Unit 12. Maʻafala was SHOPO's president; Lutu was vice president; Cusumano was secretary; Faumuina was a director; and Tamashiro was the elections officer.

On December 22, 2017, Civil Beat published an article written by Nick **Grube** titled *New Police Chief Reassigns Union President To Patrol Shift*. The article contained several statements about Maʻafala and the Peer Support Unit, attributed to Ballard. By letter to Ballard dated January 11, 2018, SHOPO executive director Russell **Akana** addressed what he described as "false statements, misrepresentations and inaccuracies that were attributed to" Ballard in the article. Akana wrote:

> If you believe your statements were taken out of context or inaccurately reported, please tell us and explain as we are more than willing to give you the benefit of the doubt. However, if what was reported and attributed to you was accurate, then given the current situation, SHOPO is willing to give you the opportunity to publicly retract your statements that appear in Civil Beat's 12/22/17 article, in addition to issuing a public written apology to SHOPO and Sergeant Maʻafala including a statement that the allegations noted above were not true. If you comply, SHOPO and its President will consider the matter resolved and will give you until the close of business on **Tuesday, January 16, 2018**, after which SHOPO will assume you have no interest in retracting your statements or correcting the record. If that ends up being the case, SHOPO and its President will have no choice but to pursue its legal options including the filing of a Prohibited Practice Complaint against you and the City and County of Honolulu, and seek other civil remedies that may be available.

Ballard responded by letter dated January 18, 2018:

> It is regrettable that Sergeant Tenari Maafala [sic] was offended by the article and the characterizations made by its author, Mr. Nick Grube. Indeed, it was not my intention to offend nor demean Sergeant Maafala [sic] when I was being interviewed. My comments were focused on my background with and vision for the Peer Support Unit and that Mr. Grube chose to write his article the way he did was not within my control.

On February 5, 2018, SHOPO filed the Prohibited Practices Complaint with HLRB. The complaint alleged that in November 2017, the SHOPO officials were reassigned within HPD in violation of HRS § 89-13(a)(1)-(5), (7), and (8),[6] and the Unit 12 collective bargaining agreement (**CBA**). The complaint also alleged that the City violated Maʻafala's privacy rights. SHOPO sought the following relief:

a.    That an order issue from the Board finding that Respondents have committed a prohibited practice pursuant to HRS §[]89-13(a)(l)-(5), (7) and (8);

b.    That an order issue from the Board finding that Respondents have violated SHOPO's President's privacy rights;

c.    That an order issue from the Board directing

---

[6]    HRS § 89-13 (2012) provides, in relevant part:

(a)    It shall be a prohibited practice for a public employer or its designated representative wilfully to:

(1)    Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter;

(2)    Dominate, interfere, or assist in the formation, existence, or administration of any employee organization;

(3)    Discriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization;

(4)    Discharge or otherwise discriminate against an employee because the employee has signed or filed an affidavit, petition, or complaint or given any information or testimony under this chapter, or because the employee has informed, joined, or chosen to be represented by any employee organization;

(5)    Refuse to bargain collectively in good faith with the exclusive representative as required in section 89-9;

.  .  .  .

(7)    Refuse or fail to comply with any provision of this chapter; [or]

(8)    Violate the terms of a collective bargaining agreement[.]

Respondents to post for publication, in all locations where SHOPO members may review and gather, for 60 days, the decision of the Board finding that Respondent Ballard committed a prohibited practice as aforesaid, with proof of compliance being made to the Board and SHOPO;

d. That an order issue from the Board directing Respondents to publish a public apology to SHOPO and SHOPO President Maʻafala for the untrue and defamatory statements made to Civil Beat;

e. A cease and desist order prohibiting continuing violations of HRS §[]89-13(a)(l)-(5), (7) and (8);

f. That an order issue from the Board ordering Respondents to pay civil penalties of $10,000.00 per violation for willfully committing prohibited practices under HRS §[]89-13(a)(l)-(5), (7) and (8);

g. Interlocutory relief prohibiting continuing violations by the Respondents of the contractual rights of the public employees of BU-12, and the retrieval of the disclosed information by the Respondents from the recipients of the confidential information;

h. That an order issue from the Board against the Respondents enjoining them from harassing, discriminating and retaliating against SHOPO and its officers and members;

i. Make whole relief including, but not limited to, all costs and all reasonable attorney's fees incurred by SHOPO in bringing and prosecuting this prohibited practice complaint before the Board;

j. That an Order issue from the Board against Respondents, and each of them, for such other and further relief as the Board deems appropriate and proper.

HLRB conducted a prehearing conference on March 1, 2018. HLRB concluded it didn't have jurisdiction over SHOPO's HRS § 89-13(a)(8) claim that the City violated the Unit 12 CBA. That claim was dismissed.

HLRB conducted an evidentiary hearing on the remaining claims on March 16, 2018. SHOPO called Ballard and Maʻafala as witnesses, then rested. The City orally moved to dismiss SHOPO's claims. HLRB recessed the hearing and set deadlines for filing a written motion and a memorandum in opposition.

The City moved for judgment on partial findings. SHOPO filed a timely memorandum in opposition. HLRB entered its

**"Order** Granting [the City's] Motion for Judgment on Partial Findings Against [SHOPO]" on January 17, 2019.

SHOPO appealed to the circuit court. Oral argument was held. The circuit court affirmed HLRB's Order. A written order was entered on August 29, 2019. The Judgment was entered on September 11, 2019.

This appeal followed.

## II. STANDARD OF REVIEW

We review the circuit court's decision on SHOPO's agency appeal as a secondary appeal; we must determine whether the circuit court was right or wrong in its decision, applying the standards in HRS § 91-14(g) to HLRB's decision. Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).

HRS § 91-14(g) (Supp. 2018) provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1)  In violation of constitutional or statutory provisions;
> >
> > (2)  In excess of the statutory authority or jurisdiction of the agency;
> >
> > (3)  Made upon unlawful procedure;
> >
> > (4)  Affected by other error of law;
> >
> > (5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;  or
> >
> > (6)  Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under sub-

section (5); and an agency's exercise of discretion under subsection (6)." Del Monte Fresh Produce (Haw.), Inc. v. International Longshore & Warehouse Union, Local 142, 128 Hawaiʻi 289, 302, 287 P.3d 190, 203 (2012) (citation omitted).

> An agency's findings are not clearly erroneous and will be upheld if supported by reliable, probative and substantial evidence unless the reviewing court is left with a firm and definite conviction that a mistake has been made.
>
> Conclusions of law are freely reviewable under a right/wrong standard.

Poe v. Haw. Lab. Rels. Bd., 105 Hawaiʻi 97, 100, 94 P.3d 652, 655 (2004) (cleaned up). The "court reviewing an agency's decision cannot consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the finding of an expert agency in dealing with a specialized field." Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 522, 364 P.3d 213, 230 (2015) (cleaned up). When "mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." Dole Haw. Div.-Castle & Cooke, Inc. v. Ramil, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990) (citation omitted).

### III. **DISCUSSION**

We address SHOPO's points of error in the order raised in SHOPO's opening brief.

**(A)**  SHOPO contends that the circuit court:

(1)  Erroneously interpreted and applied the Hawaiʻi Supreme Court's decisions in HGEA v. Casupang, 116 Haw. 73, 99, 170 P.3d 324, 350 (2007) and Aio v. Hamada, 66 Haw. 401, 410, 664 P.2d 727, 734 (1983) and therefore, failed to find that the [HLRB] erroneously interpreted, amended and exceeded its authority by concluding that willfulness cannot be presumed or inferred when an employer engages in conduct reasonably tending to interfere with the free exercise

7

> of employee rights, or when the "natural consequence" of the Employer's conduct leads to a reasonable conclusion that HRS §[]89-13 was violated. . . .

> (2)    Erred by not finding that the HLRB violated Board precedent, the doctrine of stare decisis, and SHOPO's due process and equal protection rights by rejecting the "natural consequence" standard and indirect and circumstantial evidence, which it previously applied for decades when determining whether a respondent willfully committed a prohibited practice.

Amicus curiae University of Hawaii Professional Assembly (**UHPA**) filed a brief on this issue supporting SHOPO's position.

HRS § 89-13(a) (2012) prohibits a public employer from "wilfully" engaging in the practices enumerated in the statute. SHOPO argues that for years, HLRB has applied a "natural consequences" standard for determining willfulness under HRS § 89-13(a). HLRB's Order acknowledged this, but concluded:

> [SHOPO] cites to a definition of wilfullness used by prior Boards, namely that wilfullness can be presumed if a violation occurs as a "natural consequence" of a party's action. See e.g., Okuma-Sepe, 6 HLRB at 385 (citing United Public Workers, AFSCME, Local 646, AFL-CIO, Decision No. 374, 5 HLRB 570, 583 (1996)). However, the [Hawaiʻi Supreme] Court has confirmed that *the appropriate criteria for determining wilfullness is a showing that there was a "conscious, knowing, and deliberate intent to violate the provisions of HRS chapter 89."* HGEA v. Casupang, 116 Haw. 73, 99, 170 P.3d 324, 350 (2007) (Casupang) (citing Aio v. Hamada, 66 Haw. 401, 410, 664 P.2d 727, 734 (1983)).

> The Board has tended to follow the Court's guidance in this matter, following Casupang's definition of wilfullness in subsequent cases. See e.g., Hawaii State Teacher's Ass'n v. Board of Education, Board Case No. CE-05-672, Order No. 2541 at *11 (August 6, 2008); United Public Workers, AFSCME Local 646, AFL-CIO v. Char, Board Case No. CE-10-744, Order No. 2697 at *12-13 (April 12, 2010). Although the Board recognizes the "natural consequence" standard was previously used, the Board finds that it is inconsistent with the Court's "conscious, knowing and deliberate intent" standard and thus defers to the Court's rulings.

(Emphasis added.)

In Aio v. Hamada, 66 Haw. 401, 664 P.2d 727 (1983), HLRB's predecessor, the Hawaii Public Employment Relations Board (**HPERB**), ruled "that to make out a prohibited practice under Subsection 89-13(b), HRS, conscious, knowing, and deliberate intent to violate the provisions of chapter 89, HRS, must be

8

proven." Id. at 409-10, 664 P.2d at 732-33. The 13 public school teachers who had filed prohibited practice complaints appealed. The circuit court affirmed. The teachers filed a secondary appeal. The supreme court noted that the legislative history of HRS § 89-13 "is devoid of any reference" to what "wilfully" was intended to mean. Id. at 409, 664 P.2d at 732. It rejected the argument that "wilfully" meant "an act committed 'voluntarily' and 'with plain indifference' to the law[.]" Id. at 410, 664 P.2d at 733. It held that HPERB's interpretation was correct. Id.

The supreme court repeated the "conscious, knowing, and deliberate intent to violate" standard in In re Hawaiʻi Government Employees Association, AFSCME, Local 152, 116 Hawaiʻi 73, 170 P.3d 324 (2007) (**Casupang**). Id. at 99, 170 P.3d at 350 (citing Aio, 66 Haw. at 410, 664 P.2d at 734). In that case, the Hawaiʻi Government Employees Association (**HGEA**) filed a prohibited practice complaint against the State for removing election campaign material from a State bulletin board. The State claimed to have removed the material in reliance on guidance from the state ethics commission. HLRB dismissed the complaint. HGEA appealed. The circuit court affirmed. HGEA filed a secondary appeal. It was transferred to the supreme court. The supreme court stated:

> [T]o reiterate, it is "a prohibited practice for a public employer or its designated representative wilfully to" engage in an act enumerated in HRS § 89-13. With respect to HRS chapter 89, this court has said that ***"wilfully" means "conscious, knowing, and deliberate intent to violate the provisions of HRS chapter 89."*** Aio v. Hamada, 66 Haw. 401, 410, 664 P.2d 727, 734 (1983). Thus, in assessing a violation of HRS § 89-13, the Board was required to determine whether Respondents acted with the "conscious, knowing, and deliberate intent to violate the provisions" of HRS chapter 89 when it removed the campaign materials. Respondents assert that they did not act wilfully, but acted to comply with the Ethics Code.

Id. at 99, 170 P.3d at 350 (emphasis added). The supreme court held that "the finding of the Ethics Code violation provided a basis for dismissal of the prohibited practice complaint inasmuch

as it negated the 'willfully' mental state which is required under HRS § 89-13."  Id. at 101, 170 P.3d at 352.

SHOPO and UHPA argue that the supreme court referred to the definition of *willful* in Black's Law Dictionary — which includes "with indifference to the natural consequences" among other descriptors — in Iddings v. Mee-Lee, 82 Hawai'i 1, 7, 919 P.2d 263, 269 (1996) (quoting Willful, Black's Law Dictionary, at 1599 (6th ed. 1990)) and Marshall v. Univ. of Haw., 9 Haw. App. 21, 36 n.18, 821 P.2d 937, 946 n.18 (1991) (quoting Willful, Black's Law Dictionary, at 1434 (5th ed. 1979)), abrogated on other grounds by Hac v. Univ. of Haw., 102 Hawai'i 92, 73 P.3d 46 (2003).  Those cases address the phrase "willful and wanton misconduct" as used in the HRS § 386-8 exception to the Hawai'i Workers Compensation Law's exclusive remedy provision.  Aio and Casupang specifically address the term "willfully" as used in HRS § 89-13.

SHOPO and UHPA cite footnote 8 of Aio to support its argument that "willfull" should mean "indifference to the natural consequences."  Footnote 8 quotes the definition of the word "willful" in Black's Law Dictionary (5th ed. 1979) upon which HPERB relied in its decision.  Id. at 409-10, 409 n.8, 664 P.2d at 732-33, 732 n.8 (quoting Willful, Black's Law Dictionary, at 1434 (5th ed. 1979)).  The supreme court noted that "[w]illful is a word of many meanings, its construction often influenced by its context."  Id. (citation omitted).  In affirming HPERB's decision, the supreme court stated:

> Turning to appellants' assertion that HPERB incorrectly interpreted "wilfully" as it is employed in HRS § 89-13(b), we observe at the outset that the related legislative history is devoid of any reference thereto.  HPERB thus logically sought aid from a dictionary, and relying on the discussion of the pertinent term in Black's Law Dictionary,[8] ruled "that to make out a prohibited practice under Subsection 89-13(b), HRS, **conscious, knowing, and deliberate** intent to violate the provisions of chapter 89, HRS, must be proven."  **We have no reason to reject the construction**.

Id. at 409-10, 664 P.2d at 732-33 (emphasis added). The supreme court reaffirmed that construction in Casupang. 116 Hawaiʻi at 99, 170 P.3d at 350.

Aio and Casupang are binding on HLRB, the circuit court, and this court. HLRB's application of the "conscious, knowing, and deliberate intent" standard was not wrong. The circuit court did not err by correctly applying Hawaiʻi Supreme Court precedent.

As to SHOPO's argument that HLRB did not follow its own precedent and the doctrine of stare decisis, the supreme court has explained:

> Precedent is an adjudged case or decision of a **court**, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law. The policy of courts to stand by precedent and not to disturb settled points is referred to as the doctrine of stare decisis, and operates as a principle of self-restraint with respect to the overruling of prior decisions. The benefit of stare decisis is that it furnishes a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; eliminates the need to relitigate every relevant proposition in every case; and maintains public faith in the judiciary as a source of impersonal and reasoned judgments.

State v. Garcia, 96 Hawaiʻi 200, 205, 29 P.3d 919, 924 (2001) (cleaned up) (emphasis added). HLRB, the circuit court, and this court are bound by the supreme court's Aio and Casupang decisions. SHOPO's argument that HLRB is bound by stare decisis to follow its earlier decisions, even if contrary to later Hawaiʻi Supreme Court precedent, is without merit.

SHOPO also argues that "HLRB violated SHOPO's due process and equal protection rights[.]" "The basic elements of procedural due process of law require notice and an opportunity to be heard at a meaningful time and in a meaningful manner." Alexander & Baldwin, LLC v. Armitage, 151 Hawaiʻi 37, 54, 508 P.3d 832, 849 (2022) (cleaned up). The record shows that SHOPO received notice and a meaningful evidentiary hearing at a meaningful time. SHOPO makes no other argument that it was

deprived of equal protection under the law. Its due process and equal protection rights arguments are without merit.

        **(B)**    SHOPO contends that the circuit court:

(3)    Erred by not finding that the HLRB erroneously interpreted and exceeded its authority by concluding that it can write, create or delegate to itself the authority to dismiss a prohibited practice complaint under HRCP Rule 52(c) before the conclusion of the hearing on the merits because "the Board rules are silent or ambiguous on procedural matters[.]"

        Rule 52 of the Hawaiʻi Rules of Civil Procedure (**HRCP**), titled "Findings by the court[,]" provides:

> **(c)**    **Judgment on partial findings.**  If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim . . . that cannot under the controlling law be maintained or defeated without a favorable finding on that issue[.]

        The HRCP "govern the procedure *in the circuit courts* of the State in all suits of a civil nature[.]" HRCP Rule 1(a) (emphasis added). We previously held that the HRCP "do not govern agency proceedings, except through the proper adoption of a rule or amendment authorized by law." Los Banos v. Haw. Lab. Rels. Bd., No. CAAP-17-0000476, 2019 WL 6248555, at *15 (Haw. App. Nov. 22, 2019) (mem.) (citing HRS §§ 91-3 & 91-9), cert. rejected, SCWC-17-0000476, 2020 WL 1557277 (Haw. Apr. 1, 2020).

        HLRB may "[c]onduct proceedings on complaints of prohibited practices by employers . . . and take such actions with respect thereto as it deems necessary and proper[.]" HRS § 89-5(i)(4) (2012). HLRB is also allowed to "[a]dopt rules relative to the exercise of its powers and authority and to govern the proceedings before it in accordance with chapter 91" and to "[e]xecute all of its responsibilities in a timely manner

so as to facilitate and expedite the resolution of issues before it." HRS § 89-5(i)(9)-(10) (2012).[7]

Hawaii Administrative Rules (**HAR**) § 12-42-8 governs proceedings before HLRB. The rule provides:

> (g) Hearings:
>
> . . . .
>
> (3) Motions:
>
>> (A) All motions made during a hearing shall be made part of the record of the proceedings.
>>
>> (B) Motions to dismiss a case shall be filed at least forty-eight hours before the time of hearing of the case, and shall conform to the requirements in section 12-42-8(g)(3)(C)[sic].
>>
>> (C) All motions other than those made during a hearing shall be subject to the following:
>>
>>> (i) Such motions shall be made in writing to the board, shall briefly state the relief sought, and shall be accompanied by affidavits or memoranda setting forth the grounds upon which they are based.
>>>
>>> (ii) The moving party shall serve a copy of all motion papers on all other parties and shall, within three days thereafter, file with the board the original and five copies with certificate of service on all parties.
>>>
>>> (iii) Answering affidavits, if any, shall be served on all parties and the original and five copies, with certificate of service on all parties, shall be filed with the board within five days after service of the motion papers, unless the board directs otherwise.
>>
>> . . . .
>>
>> (16) The charging party, in asserting a violation of chapter 89, HRS, or this chapter, shall have the burden of proving the allegations by a preponderance of the evidence.

SHOPO argues that HLRB "violated HAR § 12-42-8(g)(3)(B) & (C) when it dismissed SHOPO's complaint halfway through the hearing on the merits." The administrative rule requires that

-------------------

[7] The cited provisions were recodified as HRS § 89-5(i)(10) and (11) in 2019. See 2019 Haw. Sess. Laws Act 231, § 1 at 667-68.

"[m]otions to dismiss a case shall be filed at least forty-eight hours before the time of hearing of the case[.]"  The argument mischaracterizes the nature of the City's motion.  It was not a motion to dismiss for failure to state a claim upon which relief could be granted — for which HLRB would have to assume that the facts alleged in SHOPO's complaint were true.  It was like a motion for directed verdict.  It was made after SHOPO rested its case-in-chief.  It argued that SHOPO did not sustain its burden of proof.  It was made in writing.  SHOPO filed a memorandum in opposition.  HLRB followed HAR § 12-42-8(g)(3)(A), which requires that "motions made during a hearing shall be made part of the record of the proceedings."

HAR § 12-42-8 is to be "liberally construed to effectuate the purpose of chapter 89, HRS, and to secure the just and speedy determination of every proceeding."  HAR § 12-42-2 (eff. Feb. 6, 1981 - Oct. 21, 2022).  "All irrelevant, immaterial, or unduly repetitious evidence shall be excluded" by HLRB.  HAR § 12-42-8(g)(8)(B) (eff. Feb. 6, 1981 - Oct. 21, 2022).

> [A] harmonious reading of [HLRB]'s rules permits [HLRB] to hear motions akin to [an HRCP Rule 52(c) motion for judgment on partial findings], so long as the party opposing the motion is given a full and fair opportunity to be heard on the motion after reasonable notice, and the rules applicable to the Board are not otherwise violated.

Los Banos, 2019 WL 6248555, at *15.  HLRB acted within its statutory powers by considering and ruling on the City's motion.

**(C)**  SHOPO contends that the circuit court:

(4)   Erred by [not] finding that the [HLRB] erroneously interpreted, amended and exceeded its authority by concluding that it has no jurisdiction to decide and apply the HPD's standards of conduct, policies, supervisory principles, or the Uniform Information Practices Act, even when they were intertwined and/or related to a prohibited practice under HRS §[]89-13, and therefore it erroneously ignored and rejected critical evidence.

14

HLRB's Order stated:

> [T]he Board has no jurisdiction over the HPD's standards of conduct, supervisory principles, or the Uniform Information Practices Act ([**UIPA**]). . . . Therefore, alleged violations of any of the listed items are not relevant to the Board's decision.
>
> . . . .
>
> As for SHOPO's argument that Chief Ballard violated the HPD Standards of Conduct, these Standards of Conduct do not fall under the Board's Chapter 89 jurisdiction, which focuses on collective bargaining. Thus, any alleged violations of these standards cannot be considered by the Board.

SHOPO relies on United Public Workers, AFSCME, Local 646 v. Abercrombie, 133 Hawaiʻi 188, 325 P.3d 600 (2014). In that case, then-Governor Linda Lingle[8] unilaterally planned to furlough all state employees three days per month to avoid having to lay off any employees. The United Public Workers (**UPW**) sued to enjoin the furloughs (the **Furlough Lawsuit**). The circuit court enjoined the furloughs. Various State employees were then told they would be layed off. UPW responded by filing a prohibited practices complaint with HLRB.

UPW also filed another lawsuit (the **Retaliation Lawsuit**) alleging that its members were being laid off in retaliation for UPW filing the Furlough Lawsuit, in violation of the Hawaiʻi Whistleblowers' Protection Act, HRS Chapter 378 (**HWPA**). The circuit court dismissed the Retaliation Lawsuit. It concluded that HLRB had exclusive original jurisdiction over UPW's claims, and the circuit court could only review HLRB's decision in its appellate capacity under HRS § 91-14. UPW appealed. We vacated the circuit court's judgment and remanded the case with instructions to stay the Retaliation Lawsuit under the primary jurisdiction doctrine, so the parties could pursue appropriate administrative remedies before HLRB. United Public

---

[8] While the case was on appeal, Neil Abercrombie succeeded Lingle as governor. Abercrombie was automatically substituted for Lingle under HRAP Rule 43(c).

Workers, AFSCME, Local 646 v. Lingle, No. CAAP-12-0000505, 2013 WL 3063803, at *5 (Haw. App. June 18, 2013) (mem.). UPW applied for a writ of certiorari.

The supreme court noted that the Retaliation Lawsuit was within the original jurisdiction of the circuit court. UPW v. Abercrombie, 133 Hawaiʻi at 196, 325 P.3d at 608. However, if the State retaliated against UPW members because UPW tried to exercise its right to collectively bargain the furloughs, the HWPA claim would also implicate collective bargaining rights under HRS Chapter 89. Id. at 200, 325 P.3d at 612. The supreme court held that "UPW's retaliation claims raise *issues* of public employment policy that ought to be considered by the HLRB in the interest of a uniform and expert administration of the regulatory scheme laid down by HRS Chapter 89[,]" triggering the primary jurisdiction doctrine. Id. at 200-01, 325 P.3d at 612-13 (emphasis added). The supreme court clarified:

> The agency and the court need not have concurrent jurisdiction over the **claims**, as long as the agency and the court have concurrent jurisdiction over **issues presented** in the claims. . . .
>
> The retaliation allegations in UPW's complaint provide a basis for both a prohibited practice claim and claims under the HWPA . . . ; however, one issue is determinative of all these claims, namely, whether [Lingle's] decision to lay off government employees was motivated by the Furlough Lawsuit. Thus, the question of whether Defendants violated the HWPA . . . [is] inextricably intertwined with the question of whether Defendants engaged in a[n] HRS § 89-13(a)(4) prohibited practice. Under these circumstances, we conclude that the HLRB must be the first to pass on the **motivations** for [Lingles's] decision to implement the layoffs.

Id. at 201-02, 325 P.3d at 613-14 (emphasis added). Thus, UPW v. Abercrombie does not stand for the proposition that HLRB has jurisdiction to decide whether the City violated the UIPA. But if *conduct* violating the UIPA (or HPD's standards of conduct) could also be a prohibited practice under HRS § 89-13(a), HLRB may consider the conduct to determine whether a prohibited practice took place. To the extent HLRB ruled otherwise, its ruling was erroneous.

HLRB ruled on the City's motion for judgment on partial findings after SHOPO concluded presentation of its case-in-chief. SHOPO's opening brief on appeal does not explain how the evidence presented to HLRB proved that Ballard's acts or omissions violated UIPA or HPD's standards of conduct. SHOPO's reply brief cites to a memo dated November 6, 2017, from then-acting deputy chief William Axt informing Maʻafala that his special assignment to the Peer Support Unit will end, he will be on special assignment to District 6 "due to the rise in high profile criminal activity[,]" and the Peer Support Unit will be reassigned to the Community Affairs Division. But SHOPO doesn't explain how the memo violated the UIPA or HPD's standards of conduct. SHOPO also cites to Ballard's testimony about transferring Maʻafala from the Peer Support Unit. SHOPO doesn't explain how the testimony proves that Ballard violated the UIPA or HPD's standards of conduct.

SHOPO cites no other evidence in the record of conduct by Ballard that violated the UIPA or HPD's standards of conduct, or argue why that conduct should have been found to constitute a practice prohibited by HRS § 89-13(a). We also note that after the proceedings below concluded, the supreme court held that the UIPA provides no express or implied cause of action to prevent disclosure of government records. State of Hawaii Organization of Police Officers v. City & Cnty. of Honolulu, 149 Hawaiʻi 492, 506, 494 P.3d 1225, 1239 (2021).

On this record, HLRB's erroneous conclusion that it lacked jurisdiction to consider the UIPA and HPD's standards of conduct was harmless, because SHOPO did not establish that Ballard or HPD violated the UIPA or HPD's standards of conduct.

**(D)** SHOPO contends that the circuit court:

(5)    Erred by not finding that the HLRB erroneously
       interpreted, amended and exceeded its authority by
       concluding that SHOPO failed to exhaust its remedies
       and thus cannot pursue an HRS §[]89-13(a)(8) claim,
       and further erred in finding that this claim was not
       properly before it.

17

SHOPO's Prohibited Practices Complaint alleged that the City violated Articles 4 (Discrimination), 7.D. (Transfer or Reassignment of Union Officials), 13 (Discipline and Dismissal), and 20 (Transfers) of the Unit 12 CBA. During a prehearing conference, HLRB on its own dismissed SHOPO's HRS § 89-13(a)(8) claim that the City violated the CBA, "based on SHOPO's failure to exhaust its remedies under the Unit 12 collective bargaining agreement[.]" SHOPO contends that HLRB erred by so doing.

The City contends that SHOPO's appeal on this issue is untimely. The City cites HOH Corp. v. Motor Vehicle Indus. Licensing Bd., 69 Haw. 135, 141, 736 P.2d 1271, 1275 (1987) in support of its timeliness argument. The cited part of the supreme court opinion does not address the timeliness issue. Rather, it stands for the proposition that judicial review of an agency determination must be "confined to issues properly raised in the record of the administrative proceedings below." Id. The transcript of the prehearing conference (during which SHOPO's HRS § 89-13(a)(8) claim was dismissed) is in the record on appeal. HOH Corp. is inapposite.

HRS § 91-14(a) (2012) provides for appeals only from final decisions and orders in a contested case. HLRB's dismissal of one of SHOPO's claims during the prehearing conference was not a final decision or order from which an appeal could be taken. Nor was the interlocutory dismissal "a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief[.]" HRS § 91-14(a); see, e.g., Mitchell v. State, Dep't of Educ., 77 Hawaiʻi 305, 308, 884 P.2d 368, 371 (1994) (noting that appeal would be allowed where agency's preliminary ruling "requires immediate execution of a command that property be delivered to the appellant's adversary, and the losing party would be subjected to irreparable injury if appellate review had to wait the final outcome of the litigation" (citing Penn v. Transp.

Lease Haw., Ltd., 2 Haw. App. 272, 274, 630 P.2d 646, 649 (1981))). SHOPO's appeal from HLRB's dismissal of its HRS § 89-13(a)(8) claim is not untimely.

HLRB members and SHOPO's counsel had this exchange during the prehearing conference:

> [HLRB]: . . . 89-13(a)(8) speaks specifically to collective bargaining violations.
>
> [SHOPO]: Right.
>
> [HLRB]: And, you know, we don't have jurisdiction over it unless the grievance process has been exhausted. So I guess this would apply to all of your Article 13 [(discipline and dismissal)], Article 20 [(transfers)] -- that was more a definition -- but Article 4 [(discrimination)]. Are you alleging discrimination and interference or both?
>
> . . . .
>
> [SHOPO]: Yes, both. And to be clear, we're not seeking -- our individual officials are not seeking any individual remedies that are available under this procedure. They elected not to pursue that. So we are not pursuing any remedies under breach for the individual members.
>
> [HLRB]: So you have not filed a grievance?
>
> [SHOPO]: . . . [T]he individual officials elected not to. They don't want any remedies for themselves individually. They don't want to be transferred back. ***SHOPO is asserting these allegations and asserting that this is a violation of Article 13.***
>
> Because, in general, what we allege happened has caused a chilling effect on our members. Now they're scared that they're going to assert or use their -- their rights under Chapter 89 and the CBA, and they're going to be retaliated against, they're going to be discriminated against.
>
> We're looking for an injunction and a declaratory action or relief, finding that there was a violation [and] ordering the chief of police to stop this. And with that, we're hoping that the chilling effect will stop, and our members won't have that fear of exercising their rights.
>
> [HLRB]: Okay. So that really goes to probably our [sic] 89-13(a)(1) to (4). . . .
>
> . . . .
>
> . . . The union on its own behalf has not filed a union grievance saying that those provisions are being violated by the employer and then proceeded to seek resolution under the arbitration provision?

[SHOPO]: Yes, that's correct.

. . . .

[HLRB]: Okay.  I think, you know, we're -- under [Poe], you know, you're -- you come here before us with an (a)(8) that you have to have exhausted, your contractual remedies, for you to prevail under (a)(8).  In this situation you folks didn't file a grievance.  It's not going through grievance.

So and just my opinion.  I don't think we have jurisdiction over any of your (a)(8) claims, okay.  So your (a)(1) through (4) and (5), you know, I think, just my opinion, you know, you should be able to go forward with that.

. . . .

. . . [T]he board has discussed whether or not we have jurisdiction over complainant's 89-13(a)(8) claims.  And under [Poe] we believe we do not have jurisdiction.  And since it is a jurisdictional decision and we lack jurisdiction over the (a)(8) claims, (indiscernible) dismiss those claims, which the board has made a decision unanimously to dismiss those (a)(8) claims.  But we will go forward with the hearing on the merits on the (a)(1) to (5) and (7) claims, okay.

(Emphasis added.)

HLRB seems to have relied on Poe v. Haw. Lab. Rels. Bd., 105 Hawaiʻi 97, 94 P.3d 652 (2004).  Poe worked for the State of Hawaiʻi.  He was a member of bargaining Unit 3.  He filed five grievances against the State.  He represented himself through step 3 of the grievance procedure.  In one grievance, he asked HGEA to pursue a step 4 arbitration.  HGEA declined because it felt the grievance lacked merit.  Poe did not ask HGEA to arbitrate his other four grievances.  Instead, he filed five prohibited practices complaints against the State with HLRB.[9] HLRB dismissed each complaint for failure to exhaust contractual remedies.  Poe appealed to the circuit court.  The circuit court consolidated the appeals and affirmed HLRB.  Poe filed a secondary appeal.

---

[9] It does not appear that Poe alleged that HGEA breached its duty of fair representation.  HGEA was not named as a party in any of the underlying cases.

The supreme court recognized that an employee who is prevented from exhausting their remedies under a collective bargaining agreement may still sue the employer for breach of the collective bargaining agreement "provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." Poe, 105 Hawaiʻi at 103-04, 94 P.3d at 658-59 (citation omitted).[10] The supreme court determined that Poe did not show that he was prevented from exhausting his contractual remedies because he did not ask his union to arbitrate four of his grievances. Id. at 104, 94 P.3d at 659. As to the fifth grievance (which HGEA declined to arbitrate), Poe conceded that he could not prove that HGEA breached its duty of fair representation. The supreme court held that Poe lacked standing to pursue his claim before the HLRB. Id.

SHOPO argues that its Prohibited Practices Complaint "was filed by SHOPO and not by or on behalf of an individual member under the CBA's grievance procedure." But the CBA's grievance procedure also applies to "a complaint filed by . . . the Union individually . . . alleging a violation, misinterpretation or misapplication of a provision of this Agreement[.]" SHOPO's claims that the City violated Articles 4, 7.D., 13, and 20 of the Unit 12 CBA were subject to the grievance procedure in Article 32 of the Unit 12 CBA. SHOPO did not follow the grievance procedure. Under Poe, SHOPO failed to exhaust its remedies under the CBA, which it had to do to pursue its HRS § 89-13(a)(8) claim for violation of the CBA with HLRB.

SHOPO also argues that its Prohibited Practices Complaint "requested relief that enforced its collective bargaining rights under HRS § 89-13, and not remedies for any

---

[10] We refer to this kind of action as a "hybrid action." Lee v. United Public Workers, AFSCME, Local 646, 125 Hawaiʻi 317, 321, 260 P.3d 1135, 1139 (App. 2011).

alleged per se violation of the CBA between SHOPO and Respondents."  This relief could be afforded under HRS § 89-13(a)(2), (3), (4), (5), and (7), but not (8).

SHOPO then argues that it requested "declaratory and injunctive relief for the benefit of all its members," not personal remedies for individual employees under the CBA.  In In re United Public Workers, AFSCME, Local 646, 131 Hawaiʻi 142, 315 P.3d 768 (App. 2013), a labor union petitioned HLRB for a declaration that public employers may not subpoena certain records from the union because it would have a chilling effect on the rights of public employees in violation of HRS § 89-3.  The State moved to dismiss for lack of jurisdiction.  HLRB denied the motion.  HLRB issued a decision that included the requested declaration.  The State appealed.  The circuit court "reversed because the Board exceeded its authority."  Id. at 149, 315 P.3d at 775.  The union filed a secondary appeal.

We noted that "HLRB's jurisdiction clearly extends to determining whether, in a particular instance, specified employer conduct constitutes a 'prohibited practice' under HRS § 89-13." In re United Public Workers, 131 Hawaiʻi at 151, 315 P.3d at 777 (citing Fasi v. State Pub. Emp. Rels. Bd., 60 Haw. 436, 444-45, 591 P.2d 113, 118 (1979)).  We also noted that HRS § 91-8 and HAR § 12-42-9 contemplated declaratory rulings by agencies such as HLRB, id. at 150-51, 351 P.3d at 776-77, and that the supreme court held that was so "even if the parties were required to submit the question to arbitration[,]" id. at 151, 315 P.3d at 777 (citing Fasi, 60 Haw. at 444, 593 P.2d at 118).  We concluded that "HLRB had jurisdiction to declare whether the factual circumstances presented to it on the [union's petition] would constitute a prohibited practice" under HRS § 89-13(a)(1).  Id. at 153, 315 P.3d at 779.

Here, we also conclude that HLRB had jurisdiction, under HRS § 91-8 and HAR § 12-42-9, to *declare* whether the factual circumstances presented to it on SHOPO's Prohibited Practices Complaint would be a prohibited practice under any

22

subpart of HRS § 89-13(a), including (8).  HLRB's jurisdiction to declare whether a particular action is a prohibited practice is not affected by the fact that the propriety of the same underlying action might also be decided by an arbitrator.  <u>In re United Public Workers</u>, 131 Hawaiʻi at 153, 315 P.3d at 779.  However, SHOPO did not exhaust its contractual remedies under the Unit 12 CBA.  HLRB did not err by dismissing SHOPO's claim under HRS § 89-13(a)(8) for the City's alleged violations of the Unit 12 CBA.

> **(E)**  SHOPO contends that the circuit court:
>
> (6)  Erred by not finding that the HLRB erroneously interpreted, amended and exceeded its authority by requiring evidence of "a threat of reprisal or force or promise of benefit" to establish a prohibited practice complaint; and applying the wrong analysis to SHOPO's discrimination claims, including its failure to properly apply the burden shifting analysis, its failure to find that SHOPO established a <u>prima facie</u> case of discrimination, erroneously concluding that the reorganization of the [Peer Support Unit] and the transfer of the union officials did not rise to the level of "inherently destructive", [sic] erroneously finding that Chief Ballard's conduct was <u>prima facie</u> lawful, and failing to find that Chief Ballard acted with antiunion [sic] animus.  To the extent that the Board made factual findings, such findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.
>
> (7)  Erred by not finding that the HLRB made Findings of Fact that are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

We review findings of fact under the "clearly erroneous" standard.  <u>Del Monte Fresh Produce</u>, 128 Hawaiʻi at 302, 287 P.3d at 203; <u>Poe</u>, 105 Hawaiʻi at 100, 94 P.3d at 655.

SHOPO's statement of the points of error does not quote the findings of fact SHOPO contends are clearly erroneous (HLRB's findings of fact were not numbered), or reference specific findings in the HLRB Order appended to the opening brief, as required by Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(C).  SHOPO's brief argues that HLRB's findings of fact that "quotes from Ballard in the [Grube] Article do not

mention Maʻafala's position as SHOPO President, and they focus primarily on the [Peer Support Unit] and her planned revamp of the unit" and that "quotes from Ballard in the Article do not mention any of the other Officers," were clearly erroneous.

The City's answering brief has less than a page of generic argument about conflicting evidence and witness credibility. It fails to point us to any evidence in the record supporting the findings of fact challenged by SHOPO.

This issue is narrow and specific, such that we do not have to search a voluminous record for the information that should have been provided by the parties. See Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) (first quoting Lanai Co., Inc. v. Land Use Comm'n, 105 Hawaiʻi 296, 309 n.31, 97 P.3d 372, 385 n.31 (2004) (explaining that an appellate court "is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions"); and then citing Miyamoto v. Lum, 104 Hawaiʻi 1, 11 n.14, 84 P.3d 509, 519 n.14 (2004)). The HLRB Order stated:

> The [Grube] Article included information regarding the [Peer Support Unit], the transfers of the Officers, and included additional information regarding Maʻafala and his position as SHOPO President. ***The quotes from Ballard in the Article do not mention Maʻafala's position as SHOPO President***, and they focus primarily on the [Peer Support Unit] and her planned revamp of the unit. ***The quotes from Ballard in the Article do not mention any of the other Officers***.

(Emphasis added.)

Grube's Civil Beat article was titled *New Police Chief Reassigns Union President To Patrol Shift* but the title does not quote Ballard. The lead-in stated, "Susan Ballard says she had concerns with how the department's Peer Support Unit was led by SHOPO chief Tenari Maafala." The lead-in is ambiguous about whether Ballard mentioned Maʻafala's position with SHOPO to Grube, or whether Grube or his editor were simply echoing the headline. Nowhere in the text of the article is Ballard quoted as referring to Maʻafala as SHOPO's president.

24

Grube's article stated:

> Ballard said the paid officers in the [peer support] unit, which in addition to Maafala included Don Faumuina and Sgt. Michael Tamashiro, had issues with overtime that, she said, didn't follow along with the spirit of the unit's mission, which is spelled out in HPD's policies.
>
> . . . .
>
> Ballard said she asked Maafala if he wanted to remain with the Peer Support Unit on a volunteer basis, but he declined. Tamashiro and Faumuina, who is an at-large director for the State of Hawaii Organization of Police Officers union, have also been reassigned.

(Hyperlink omitted.)  Grube's writing is ambiguous about whether Ballard told Grube that Faumuina and Tamashiro were in the Peer Support Unit, or whether Grube on his own reported that Faumuina and Tamashiro were the other members.  Grube did not write that Ballard said Tamashiro and Faumuina had "also been reassigned." Grube may have obtained the information from Faumuina, or Tamashiro, or someone else at HPD who was familiar with the reorganization.  Ballard testified:

> Nick Grube already had all this information.  It was nothing that I gave out.  He knew everybody who was being transferred.  He knew where they were going to be assigned. He knew pretty much everything that was discussed, different questions that he asked.  He had all that information already.  From where he got it, I don't know.

SHOPO did not call Grube as a witness at the HLRB hearing, so there is no evidence in the record to explain the ambiguities. HLRB found Ballard to be credible.  We "cannot . . . review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony[.]"  Sierra Club v. D.R. Horton-Schuler Homes, LLC, 136 Hawaiʻi 505, 522, 364 P.3d 213, 230 (2015) (cleaned up).  On this record, we cannot say that the challenged findings of fact were clearly erroneous.

HLRB found:

> In November of 2018, Chief Ballard presented a plan for the HPD moving forward, entitled "A New Beginning." As part of this plan, Chief Ballard decided to revamp the [Peer Support Unit] and turn it into a unit that was more like its

25

> original concept in the mid-1990s.

This finding was not clearly erroneous. Ballard's plan titled "A New Beginning" was dated November 8, 2017.

SHOPO argues that Ma‘afala, Faumuina, and Tamashiro being notified on November 3, 2017 — five days before Ballard's plan was unveiled — shows that HLRB was wrong in concluding that

> Chief Ballard's vision for the department when she became Chief of Police included reorganizing the [Peer Support Unit] and restoring it to its original vision as set up in the mid-1990s. Based on the evidence, the Board finds that the evidence shows that Chief Ballard's conduct was <u>prima facie</u> lawful.

HLRB's conclusion was supported by substantial evidence in the record. Ballard testified that "the entire [Peer Support Unit] was set up for volunteers." She explained:

> [T]he [Peer Support Unit] is a volunteer unit. And per policy it also states that it is a volunteer unit and it is not a unit where overtime is to be earned on a regular basis. There are options -- there are times when it could be used.
>
> And based on the fact that there was just three of them, three people there who were responding, then of course obviously there's going to be some overtime because of the fact that there was only three. But the way that the unit and the program was set up, it was supposed to have been set up as a volunteer unit using a lot -- quite a few people, officers as well as civilians within the police department, to respond to the various critical incidences [sic] that occur.

Ballard's explanation follows HPD Policy No. 3.15, which states that the Peer Support Unit "is a voluntary and confidential resource for all [HPD] employees and their families. It provides support and assistance for personal and/or work-related problems and debriefings for critical incidents." It explains the statement, attributed to Ballard in the Grube Civil Beat article, that "the paid officers in the [peer support] unit, which in addition to Maafala [sic] included Don Faumuina and Sgt. Michael Tamashiro, had issues with overtime that, she said, didn't follow along with the spirit of the unit's mission, which

is spelled out in HPD's policies" (hyperlink omitted). The peer support was supposed to have been provided by volunteers, not by the officers who administered the volunteers. It also explains Ballard transferring command of the Peer Support Unit from the Chief's Office to the Community Affairs Division, eliminating full-time staffing for the unit, and directing the Community Affairs Division commander to contact unit volunteers or police chaplains to respond to critical incidents, rather than having the paid unit staff respond to critical incidents.

HLRB noted that HRS § 89-9(d)(3) stated that the City and SHOPO "shall not agree to any [collective bargaining] proposal . . . which would interfere with the rights and obligations of a public employer to . . . [h]ire, promote, transfer, assign, and retain employees in positions[.]" HLRB concluded that "[t]ransferring employees is undoubtedly a management right under the statute." That conclusion was supported by HLRB's findings of fact (which were supported by substantial evidence in the record) and reflects an application of the correct rule of law; it will not be overturned. See Est. of Klink ex rel Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

SHOPO challenges HLRB's finding that "[w]hile SHOPO also brings up the issue of the transfers of the Officers, only one of the Officers (Maʻafala) testified as to the transfers, and he stated that he viewed the transfer 'like a sense of relief.'" Ma'afala was the only police officer (beside Ballard) who testified before HLRB. During the hearing Maʻafala was asked whether he had "a problem" with his transfer. He testified, "Sorry to chuckle. First and foremost no, because I actually looked at it as a -- pardon the expression, it was like a sense of relief." HLRB's finding was not clearly erroneous.

SHOPO argues that Maʻafala's testimony was "incomplete and out of context" because when he later learned that Ballard "publicly defamed him . . . through the Civil Beat article, he was 'shattered' and 'offended', [sic] and his daughters called

27

him crying."  Maʻafala's and his daughters' subjective reactions to Grube's Civil Beat article are irrelevant to HLRB's finding that "[b]ased on the evidence, there is no evidence that the transfers were adverse actions taken against the officers. Complainant also has not shown that Chief Ballard's statements constituted an 'adverse action.'"

SHOPO's remaining challenges to HLRB's findings of fact cite to the text of SHOPO's circuit court notice of appeal, not to HLRB's Order.  The notice of appeal did not cite to where in HLRB's Order the challenged findings were located.  We decline to search for them ourselves.  See Haw. Ventures, LLC, 114 Hawaiʻi at 480, 164 P.3d at 738.

**(F)**  SHOPO contends that the circuit court:

(8)  Erred by not finding that the HLRB violated SHOPO's constitutional right to collectively bargain under the Hawaiʻi State Constitution, Article XIII, section 2 by ignoring the CBA as it applies to transfers.

SHOPO's Prohibited Practices Complaint did not allege that the City violated article XIII, section 2 of the Hawaiʻi Constitution.  HLRB's Order contained no reference to article XIII, section 2 of the Hawaiʻi Constitution.  SHOPO's opening brief cites article XIII, section 2 of the Hawaiʻi Constitution in a footnote, but makes no legal argument about how SHOPO's constitutional right to collectively bargain were violated.  The issue is waived.  See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

**(G)**  SHOPO contends that the circuit court:

(9)  Erred by not finding that the HLRB acted arbitrarily, capriciously and abused its discretion.

SHOPO seems to argue that HLRB arbitrarily and capriciously disregarded SHOPO's arguments and abused its discretion by making clearly erroneous findings of fact.  SHOPO has not shown that HLRB's findings of fact were clearly

erroneous, that HLRB's conclusions of law were wrong, or that HLRB "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." James B. Nutter & Co. v. Namahoe, 153 Hawaiʻi 149, 162, 528 P.3d 222, 235 (2023) (citation omitted). SHOPO's final point of error lacks merit.

## IV. CONCLUSION

For all these reasons, the "Judgment" entered by the circuit court on September 11, 2019, and the "Order Granting Respondents' Motion for Judgment on Partial Findings Against Complainant" entered by HLRB on January 17, 2019, are affirmed.

DATED:  Honolulu, Hawaiʻi, December 29, 2023.

On the briefs:

Vladimir Devens,
Keani Alapa,
for Complainant-
Appellant-Appellant.

Molly A. Stebbins,
for Respondents-
Appellees-Appellees.

T. Anthony Gill,
Wade C. Zukeran,
David A. Sgan,
for Amicus Curiae
University of Hawaii
Professional Assembly.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge